**BLANK ROME LLP**
Melissa Fundora Murphy (*admitted pro hac vice*)
Glen L. Abramson (*pro hac vice forthcoming*)
Serena S. Gopal (*pro hac vice forthcoming*)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Telephone: 215.569.5334
melissa.murphy@blankrome.com
glen.abramson@blankrome.com
serena.gopal@blankrome.com

Ana Tagvoryan (SBN 246536)
Jessica A. McElroy (SBN 299919)
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434
ana.tagvoryan@blankrome.com
jessica.mcelroy@blankrome.com

*Attorneys for Defendant*,
LUXOTTICA OF AMERICA INC.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| BRANDON MOORE, DANIEL ALDANA, and HOPE KAMBICK, as individuals, on behalf of themselves, the general public, and those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LUXOTTICA OF AMERICA, INC., <br><br> Defendant. | Case No. 4:25-cv-10840-JST <br><br> **LUXOTTICA OF AMERICA INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> Date: May 7, 2026 <br> Time: 2:00 p.m. <br> Courtroom: 6 <br> Judge: Jon S. Tigar |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 7, 2026, at 2:00 p.m., or as soon thereafter as this matter may be heard by the Honorable Jon S. Tigar in Courtroom 6, 2nd floor, of the above-entitled Court located at 1301 Clay Street, Oakland, California, 94612, Defendant Luxottica of America Inc. ("Luxottica") will, and hereby does, move to dismiss the Class Action Complaint ("Complaint") of Plaintiffs Brandon Moore, Daniel Aldana, and Hope Kambick (collectively, "Plaintiffs"), as individuals and on behalf of all others similarly situated, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(f).

Luxottica moves to dismiss Plaintiffs' Complaint on several grounds. As a threshold matter, Plaintiffs lack Article III standing because they do not allege invasion of the kind of sensitive information or facts that give rise to a historically-recognized privacy harm and therefore have not set forth a cognizable basis for standing upon which to sue. Accordingly, the Complaint should be dismissed in its entirety for lack of subject matter jurisdiction. Similarly, Plaintiffs' invasion of privacy and intrusion upon seclusion claims should be dismissed for failure to state a claim because they do not allege invasion or intrusion upon sensitive, private information. Plaintiffs' claims under the California Invasion of Privacy Act ("CIPA") should be dismissed for three reasons: (1) Aldana's and Kambick's claims are time-barred under CIPA's one-year statute of limitations; (2) Plaintiffs' pen register claim under § 638.51 fails because the cookies and corresponding software allegedly deployed do not meet the statutory definition of a pen register; and (3) Plaintiffs' wiretapping claim under § 631(a) fails because Plaintiffs do not sufficiently allege that third parties intercepted and read Plaintiffs' communications while in transit. Plaintiffs' claims for equitable relief should be dismissed because Plaintiffs fail to allege that they lack an adequate remedy at law or facts sufficient to establish standing to obtain injunctive relief. Plaintiffs' fraud claim should be dismissed because they fail to allege monetizable loss or diminution in value of their purportedly personal data. Lastly, Plaintiffs Aldana and Moore offer only insufficient, generalized allegations about when they accessed Luxottica's websites or relied on any misrepresentations to their alleged detriment, and their claims should accordingly be dismissed for failure to plead with particularity under Rule 9(b).

If the Court does not dismiss the Complaint in its entirety, the Court should, at minimum, dismiss all claims premised on Luxottica websites that Plaintiffs did not view themselves under Rule 12(b)(1) for lack of Article III standing and Rule 12(b)(6) for lack of statutory standing, or strike those allegations under Rule 12(f).

This Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities and all pleadings, arguments, and matters before the Court.

DATED: February 13, 2026

**BLANK ROME LLP**

By: */s/ Melissa Fundora Murphy*

Melissa Fundora Murphy (*admitted pro hac vice*)
Glen L. Abramson (*pro hac vice forthcoming*)
Serena S. Gopal (*pro hac vice forthcoming*)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Telephone: 215.569.5334
melissa.murphy@blankrome.com
glen.abramson@blankrome.com
serena.gopal@blankrome.com

Ana Tagvoryan (SBN 246536)
Jessica A. McElroy (SBN 299919)
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434
ana.tagvoryan@blankrome.com
jessica.mcelroy@blankrome.com

*Attorneys for Defendant*,
LUXOTTICA OF AMERICA INC.

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    RELEVANT FACTUAL BACKGROUND ................................................................ 2

III.   LEGAL STANDARDS ............................................................................................. 4

IV.    ARGUMENT ............................................................................................................ 5

      A.    Plaintiffs' Complaint Should Be Dismissed for Lack of Article III Standing ......... 5

      B.    Plaintiffs Fail to State a Claim for Invasion of Privacy or Intrusion Upon
          Seclusion ............................................................................................................... 9

      C.    Plaintiffs' CIPA Claims Should Be Dismissed ...................................................... 12

          1.    Plaintiffs Aldana's and Kambick's CIPA Claims Are Barred by the Statute
             of Limitations ............................................................................................. 12

          2.    Plaintiffs' CIPA Claims Under § 638 Should Be Dismissed Because the
             Alleged Third-Party Cookies Are Not "Pen Registers" ............................. 13

          3.    Plaintiffs Fail to State a Wiretapping Claim Under CIPA § 631(a) ........... 17

      D.    Plaintiffs' Equitable Claims Should Be Dismissed ............................................... 21

      E.    Plaintiffs' Fraud Claim Should Be Dismissed for Failure to Allege Damage ....... 22

      F.    Plaintiffs Aldana and Moore Fail to State Any Claim Under Rule 9(b)
          Standards ............................................................................................................. 23

      G.    Plaintiffs' Claims Based on Websites They Never Saw Should Be
          Dismissed ............................................................................................................ 24

V.     CONCLUSION ........................................................................................................ 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................. 4, 5

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010)............................................................................. 4, 5

*Chiulli v. Am. Honda Motor Co.*,
  690 F. Supp. 3d 1038 (N.D. Cal. 2023) ................................................................ 21

*Cousin v. Sharp Healthcare*,
  681 F. Supp. 3d 1117 (S.D. Cal. 2023)...................................................... 9, 21, 22

*Dawidzik v. Tesla, Inc.*,
  No. EDCV 25-01982-KK-SPX, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .................. 8, 9

*de Ayora v. Inspire Brands, Inc.*,
  No. 25-CV-03645-AGT, 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ............... 5, 13, 19, 23

*Doe v. Eating Recovery Ctr. LLC*,
  No. 23-CV-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)...................... 18, 19, 21

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................. 11

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020)....................................................... 8, 9, 10, 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
  528 U.S. 167 (2000)................................................................................................ 4

*Gabrielli v. Haleon US Inc.*,
  No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025)............................ 14

*Gabrielli v. Motorola Mobility LLC*,
  No. 24-CV-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025) .................... 8, 9, 10, 11

*Garcia v. Enter. Holdings, Inc.*,
  78 F. Supp. 3d 1125 (N.D. Cal. 2015) .................................................................... 5

*In re Google, Inc. Privacy Policy Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) .................................................................... 10

*Granfield v. NVIDIA Corp.*,
  No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012).................................... 24

*Griffith v. Tiktok, Inc.*,
  697 F. Supp. 3d 963 (C.D. Cal. 2023) ................................................................................. 23

*Gustavson v. Wrigley Sales Co.*,
  No. 12-CV-01861-LHK, 2014 WL 60197 (N.D. Cal. Jan. 7, 2014)........................................ 24

*Gutierrez v. Converse Inc.*,
  No. CV 23-6547-KK-MARX, 2024 WL 3511648 (C.D. Cal. July 12, 2024),
  *aff'd*, No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) .................................................. 19

*Ham v. Hain Celestial Grp., Inc.*,
  70 F. Supp. 3d 1188 (N.D. Cal. 2014) ................................................................................. 24

*Hernandez v. Hillsides, Inc.*,
  47 Cal.4th 272 (2009) .......................................................................................................... 9

*Hill v. Nat'l Collegiate Athletic Assn.*,
  7 Cal.4th 1 (1994) ................................................................................................................ 11

*Hubbard v. Google LLC*,
  No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ............................ 21, 23

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022) ................................................................................ 7

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................... 10

*James v. Allstate Ins. Co.*,
  No. 23-CV-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ............................... 20

*Javier v. Assurance IQ, LLC*,
  649 F. Supp. 3d 891 (N.D. Cal. 2023).................................................................................. 12

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................................................. 11

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009).......................................................................................... 22, 23

*Kishnani v. Royal Caribbean Cruises Ltd.*,
  No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) .................................. 15

*Kisil v. Illuminate Educ., Inc.*,
  No. 23-4114, 2025 WL 2589000 (9th Cir. Sept. 8, 2025) ............................................. 5, 6, 22

*Lanovaz v. Twinings N. Am., Inc.*,
  726 F. App'x 590 (9th Cir. 2018) ......................................................................................... 22

*Licea v. Am. Eagle Outfitters*,
  659 F. Supp. 3d 1072 (C.D. Cal. 2023) ............................................................................... 19

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................. 10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................. 4

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ................................................................................... 4

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) ..................................................................... 11

*In re Meta Pixel Tax Filing Cases*,
  793 F. Supp. 3d 1147 (N.D. Cal. 2025) ................................................................... 14

*Mitchener v. CuriosityStream, Inc.*,
  No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ..................... 15

*Moore v. Rodriguez*,
  No. 20-cv-01481-BAS-BGS, 2021 WL 2222590 (S.D. Cal. June 2, 2021) ..... 21, 22

*Pemberton v. Rest. Brands Int'l, Inc.*,
  No. 25-CV-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ............ 12, 13

*Phillips v. U.S. Customs & Border Prot.*,
  74 F.4th 986 (9th Cir. 2023) ...................................................... 7, 8, 10, 11, 20

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. 2025) ....................................................................... *passim*

*Price v. Converse, Inc.*,
  No. 2:24-CV-08091-FLA (EX), 2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) ..... 8

*Price v. Headspace, Inc.*,
  No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Ct. Apr. 01, 2025) ................ 15

*R.C. v. Sussex Publishers, LLC*,
  No. 24-CV-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .................... 20

*Rodriguez v. Google LLC*,
  No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........................ 19

*In re Saldana*,
  122 F.4th 333 (9th Cir. 2024) .................................................................................. 16

*Shum v. Intel Corp.*,
  630 F. Supp. 2d 1063 (N.D. Cal. 2009), *aff'd*, 633 F.3d 1067 (Fed. Cir. 2010) .... 21

*Smith v. Maryland*,
  442 U.S. 735 (1979) ................................................................................................. 17

*Sonner v. Premier Nutrition Corp.*,
　971 F.3d 834 (9th Cir. 2020)......................................................................................... 21

*Spokeo, Inc. v. Robins*,
　578 U.S. 330 (2016) ...................................................................................................... 6

*Swarts v. Home Depot, Inc.*,
　689 F. Supp. 3d 732 (N.D. Cal. 2023) ................................................................... 18, 19

*Torres v. Prudential Fin., Inc.*,
　No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ............................ 20

*TransUnion LLC v. Ramirez*,
　594 U.S. 413 (2021) ...................................................................................................... 6, 7

*United States v. New York Tel. Co.*,
　434 U.S. 159 (1977) ...................................................................................................... 17

*Valenzuela v. Keurig Green Mountain, Inc.*,
　674 F. Supp. 3d 751 (N.D. Cal. 2023) ........................................................................... 19

*Vess v. Ciba-Geigy Corp. USA*,
　317 F.3d 1097 (9th Cir. 2003).......................................................................................... 5

*In re Vizio, Inc., Consumer Priv. Litig.*,
　238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................................. 19

*Walsh v. Dollar Tree Stores, Inc.*,
　No. 25-CV-01601-SVK, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ........................ 22, 23

*Wiley v. Universal Music Grp., Inc.*,
　No. 25-CV-03095-PCP, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025)................................ 23

*Williams v. Apple, Inc.*,
　449 F. Supp. 3d 892 (N.D. Cal. 2020) ........................................................................... 22

*Williams v. Facebook, Inc.*,
　384 F. Supp. 3d 1043 (N.D. Cal. 2018) ..................................................................... 5, 23

**Statutes**

California Penal Code
　§ 629.50.......................................................................................................................... 16
　§ 631.......................................................................................................... 17, 18, 19, 20
　§ 638.50.................................................................................................................... 14, 15
　§ 638.51.......................................................................................................................... 14
　§ 638.52.................................................................................................................... 16, 17
　§ 638.53.................................................................................................................... 16, 17

## I.  **<u>INTRODUCTION</u>**

Defendant Luxottica of America Inc. ("Luxottica") respectfully submits this Motion to Dismiss the Complaint filed by Plaintiffs Brandon Moore ("Moore"), Daniel Aldana ("Aldana"), and Hope Kambick ("Kambick") (collectively, "Plaintiffs"). Plaintiffs allege that they visited Luxottica's websites—oakley.com, lenscrafters.com, and sunglasshut.com—and rejected the use of cookies, but that certain cookies and corresponding software were nonetheless deployed to collect their website activity. In particular, Plaintiffs assert that their privacy was invaded because the cookies allegedly transmitted information showing that they browsed Luxottica's retail websites for items like glasses and t-shirts. The Complaint should be dismissed in its entirety.

As a threshold matter, Plaintiffs lack Article III standing because they identify no concrete, particularized injury. Plaintiffs do not allege invasion of the kind of sensitive information or facts that give rise to a historically-recognized privacy harm and therefore have not set forth a cognizable basis for standing upon which to sue. Accordingly, the Complaint should be dismissed in its entirety for lack of subject matter jurisdiction.

Plaintiffs' Complaint should also be dismissed for failure to state a claim. In particular, Plaintiffs' invasion of privacy and intrusion upon seclusion claims should be dismissed for largely the same reasons Plaintiffs' claims fail for lack of standing: they do not allege invasion or intrusion upon sensitive, private information.

Plaintiffs' claims under the California Invasion of Privacy Act ("CIPA") should be dismissed for three reasons: (1) Aldana's and Kambick's claims are time-barred under CIPA's one-year statute of limitations; (2) Plaintiffs' pen register claim under Cal. Penal Code § 638.51 fails because the cookies and corresponding software allegedly deployed do not meet the statutory definition of a pen register; and (3) Plaintiffs' wiretapping claim under § 631(a) fails because Plaintiffs do not sufficiently allege that third parties intercepted and read their communications while in transit.

Plaintiffs' claims for equitable relief fail because Plaintiffs seek damages and therefore do not allege they lack an adequate remedy at law, and Plaintiffs lack standing to seek injunctive relief.

Plaintiffs' fraud claim should be dismissed because Plaintiffs do not plead actual, resulting damage with particularity; they fail to allege monetizable loss or diminution in value of their purportedly personal data.

Lastly, Federal Rule of Civil Procedure 9(b) demands that Plaintiffs plead the who, what, when, where, and how of their claims with particularity. Plaintiffs Aldana and Moore fail to allege the "when" and offer only insufficient, generalized allegations about when they accessed Luxottica's websites or relied on any misrepresentations to their alleged detriment.

In the alternative to dismissal in full, the Court should, at minimum, dismiss or strike all claims premised on Luxottica websites that Plaintiffs did not view themselves, because Plaintiffs do not have Article III or statutory standing to assert claims for a misrepresentation they did not personally encounter.

## II.   RELEVANT FACTUAL BACKGROUND

Defendant Luxottica specializes in vision care products and owns various brands such as Oakley and Ray-Ban. Compl. ¶ 35. Luxottica also operates multiple retail chains, including LensCrafters and Sunglass Hut. *Id.*

Plaintiffs Brandon Moore, Daniel Aldana, and Hope Kambick filed this putative class action alleging that Luxottica violated their privacy by allegedly sharing, through third-party cookies and corresponding software, that Plaintiffs browsed Luxottica websites for glasses and t-shirts. *See e.g.*, *id.* ¶¶ 1-3, 132, 143, 153-56. Plaintiffs allege that they visited oakley.com (Moore and Aldana), lenscrafters.com (Kambick), and sunglasshut.com (Kambick). *Id.* ¶ 131 (Moore), ¶ 141 (Aldana), ¶ 151 (Kambick). Notwithstanding that Plaintiffs themselves only allegedly visited three of Luxottica's websites, Plaintiffs define the "Websites" to include 19 different Luxottica-owned retail and brand websites. *Id.* ¶ 1.

According to the Complaint, when users visit Luxottica's Websites, they encounter a "popup cookie consent banner" that "discloses that the Website uses cookies but expressly gives users the option to control how they are tracked and how their personal data is used." *Id.* ¶ 1. Per Plaintiffs, each Website's banner differs in appearance, but they all allegedly represent that users

can accept or reject cookies or manage preferences to opt out of certain categories (e.g., Analytics, Social, Marketing) via option buttons or a "Cookie Manager" interface. *Id.* ¶¶ 1-2, 36-40.

Plaintiffs allege that even if a user rejects the use of cookies or adjusts their preferences to opt out of certain cookies, Luxottica "caused the Third Party tracking cookies to be placed on Website users' browsers and devices and/or transmitted to the Third Parties along with user data." *Id.* ¶¶ 3, 43. Plaintiffs define the "Third Parties" as "Adobe, Inc. (omtrdc.net), Google LLC (Google Analytics and Doubleclick), Meta Platforms, Inc. (Facebook), LiveRamp Holdings, Inc. (Pippio), X Corp (Twitter), Wunderkind Corporation (Bounceexchange), and others[.]" *Id.* ¶ 3.

Per Plaintiffs, the Third-Party cookies and corresponding software are capable of tracking and collecting alleged "Private Communications," which Plaintiffs define broadly to include browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers and geolocation data. *Id.* ¶¶ 33, 42-44.

The Complaint asserts six claims:  (1) invasion of privacy under the California Constitution; (2) intrusion upon seclusion; (3) wiretapping in violation of CIPA, California Penal Code § 631(a); (4) use of a pen register in violation of CIPA, California Penal Code § 638.51; (5) common-law fraud; and (6) unjust enrichment. *Id.* ¶¶ 172-251. The putative class is defined as all persons who browsed any of the referenced Websites in California after clicking or selecting the reject button on the cookie banner or after adjusting toggles in the "Privacy Preferences" window to opt out of cookies. *Id.* ¶ 164.

## Plaintiff-Specific Allegations

*Moore*: Plaintiff Moore alleges that "[d]uring the last year," he visited the Oakley Website on one or more occasions, viewed the cookie banner and clicked the button to reject cookies. *Id.* ¶¶ 131-32. He alleges that he then used the Oakley site's navigation and search features to search "glasses" and "tshirts" and click on the "Sale" page. *Id.* ¶ 132.

*Aldana*: Plaintiff Aldana alleges that sometime "during the last four years," he visited the Oakley Website on one or more occasions, viewed the cookie banner, and clicked the button to reject cookies. *Id.* ¶¶ 141, 144-45. He alleges that he used the search feature to search for

prescription glasses and purchased prescription glasses from the website. *Id.* ¶ 143. Aldana further alleges that he gave Luxottica notice of his claims on or about April 27, 2024. *Id.* ¶ 18.

*Kambick*: Plaintiff Kambick alleges that in or around September 2023, she visited the LensCrafters Website and, in or around November 2023, the Sunglass Hut Website. *Id.* ¶ 151. She alleges that while visiting the LensCrafters Website, she selected the "Cookie Manager" and toggled off non-essential cookies and then clicked on an "Offers" link to view sales pricing and other links for various prescription eyeglasses and added some to her cart. *Id.* ¶¶ 153-54, 156. While on the Sunglass Hut Website, she alleges that she viewed the cookie banner and clicked the button to reject cookies and looked for sales offered on the Website. *Id.* ¶¶ 153, 155. Kambick further alleges that she gave Luxottica notice of her claims on or about December 5, 2023. *Id.* ¶ 17. Kambick also alleges she filed a demand for arbitration on August 12, 2024. *Id.* ¶¶ 19-20. On May 29, 2025, the arbitrator issued an order holding that Kambick's claims were not subject to arbitration. *Id.* ¶ 24. The Complaint was filed on December 19, 2025. ECF 1.

## III.   LEGAL STANDARDS

To satisfy Article III standing, a plaintiff must allege: (1) an injury in fact that is concrete and particularized as well as actual and imminent, (2) that the injury is fairly traceable to the challenged action of the defendant, and (3) that it is likely (not merely speculative) that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). A court may dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) if the plaintiff does not satisfy Article III standing requirements. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Plaintiff has the burden of establishing that such jurisdiction exists. *Lujan*, 504 U.S. at 561. Additionally, a complaint may be dismissed for lack of statutory standing pursuant to Rule 12(b)(6). *See e.g.*, *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). Allegations that are "no more than conclusions" are

"not entitled to the assumption of truth." *Id.* Additionally, the Court need not accept any "unwarranted deductions of fact" or "unreasonable inferences." *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015).

Where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct," all of the asserted claims "sound in fraud" and are subject to Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04, 1106 (9th Cir. 2003) (Rule 9(b) requires sufficient allegations regarding "the who, what, when, where, and how" of the misconduct charged"). Accordingly, courts in this District have applied Rule 9(b) to the same claims brought here. *See e.g., de Ayora v. Inspire Brands, Inc.*, No. 25-CV-03645-AGT, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025) (applying Rule 9(b) to invasion of privacy, intrusion upon seclusion, CIPA wiretapping & pen register, fraud and unjust enrichment claims based on allegations that defendant falsely represented that users could decline all cookies on defendant's website); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1046, 1052 (N.D. Cal. 2018) (applying Rule 9(b) to invasion of privacy, intrusion upon seclusion and unjust enrichment claim where defendant allegedly "failed to represent accurately or disclose it was collecting user data in violation of user privacy").

## IV.    ARGUMENT

### A.    Plaintiffs' Complaint Should Be Dismissed for Lack of Article III Standing

Plaintiffs fail to sufficiently allege that they suffered a concrete harm or injury in fact necessary to establish Article III standing because they do not plausibly allege that the information the cookies allegedly collected was sensitive enough to implicate a well-recognized privacy interest. Accordingly, the Court should dismiss Plaintiffs' Complaint in its entirety for lack of subject matter jurisdiction. *See Chandler*, 598 F.3d at 1122.

It is well-established that a plaintiff's injury must be concrete and that a plaintiff does not automatically satisfy the injury-in-fact requirement of Article III simply because a statute grants them the right to sue. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021); *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025); *Kisil v. Illuminate Educ., Inc.*, No. 23-4114, 2025 WL 2589000, at *1 (9th Cir. Sept. 8, 2025). In

other words, Plaintiffs cannot simply point to their browsing activities, label it "Private Communications," and assert a broad, amorphous privacy interest in those activities. Such a "high level of generality" does "not align with the analysis adopted in *TransUnion*." *Popa*, 153 F.4th at 792; *see also Kisil*, 2025 WL 2589000, at *1 (the Ninth Circuit "do[es] not recognize a 'free-roaming' common law right to privacy"). Rather, Plaintiffs must allege an injury that "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (citing *Spokeo, Inc.*, 578 U. S. at 341); *Kisil*, 2025 WL 2589000, at *1 (clarifying that the "requirement of a common law analogue" applies with equal force to state statutory claims). For an alleged intangible privacy harm, both common law and statutory claims "must be 'benchmarked' to one of four distinct privacy torts," which are: intrusion upon seclusion, appropriation of another person's name or likeness, public disclosure of private facts, and defamation/false light. *Kisil*, 2025 WL 2589000, at *1 (citing *Popa*, 153 F.4th at 789-92); *Popa*, 153 F.4th at 791-92 (holding that the privacy interest implicated must be on par with common law privacy harms such as disclosure of "sensitive medical or financial information").

In *Popa*, the Ninth Circuit affirmed dismissal of privacy claims for lack of standing, holding that a defendant's tracking of user interactions on a retail website does not cause "any kind of harm that is remotely similar to the highly offensive interferences or disclosures that were actionable at common law," including the torts of "intrusion upon seclusion" and "public disclosure of private facts." *Popa*, 153 F.4th at 791. In particular, the plaintiff in *Popa* had alleged that her privacy had been invaded when she visited petsuppliesplus.com, because the defendant had allegedly employed technology to surreptitiously collect, among other things, "the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls." *Id*. at 786. The Ninth Circuit concluded that plaintiff lacked standing because she "identifie[d] no embarrassing, invasive, or otherwise private information collected," as required to establish a cognizable injury. *Id*.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

Plaintiffs' allegations here fail for the same reasons the allegations failed in *Popa*—Plaintiffs "do[] not explain how the tracking of [their] interactions with the [Luxottica] website caused [them] to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* at 791. In *Popa*, the Ninth Circuit concluded that the tracking of information like "pet-store preferences" and "street name" was inoffensive as a matter of law. *See id.* Here too, Plaintiffs allege that Third Parties collected their benign Website interactions, showing at most that they browsed oakley.com, lenscrafters.com and sunglasshut.com for retail items like glasses and t-shirts. Compl. ¶¶ 133, 143, 153. This is not the type of sensitive information that implicates a recognized privacy interest. To the contrary, it is "most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales," which does not create a cognizable injury. *See Popa*, 153 F.4th at 791.

To the extent that Plaintiffs are relying on their allegations that Luxottica permitted the information to be collected without Plaintiffs' consent as a basis to confer standing, that too fails because even where information is "illegally obtained," there must be "more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." *Id.* at 793; *TransUnion LLC*, 594 U.S. at 426–27 (emphasizing the "important difference" that exists between plaintiff's right to sue a defendant over a defendant's violation and a plaintiff suffering a concrete harm because of that violation, noting that the latter is essential to standing); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) ("[C]ourts must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all. Otherwise, every data breach (or any situation in which one loses control of information) would confer standing, regardless of whether private information is exposed."). Thus, even if a defendant's "tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information)," if the nature of the information tracked was not sensitive, there is no standing to sue. *Popa*, 153 F.4th at 791; *see also Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995-96 (9th Cir. 2023) (finding lack of standing to assert claims arising from the retention of illegally obtained identifying information because "names, birthdays, social security numbers,

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

occupations, addresses, social media profiles, and political views and associations" are "not generally considered private" and are a "far cry from the types of information that we have held are so sensitive that another's retention of the information is analogous to tortious conduct").

For these reasons, district courts following the Ninth Circuit's August 2025 *Popa* decision have routinely dismissed privacy claims (like those asserted here) for lack of standing. *See e.g.*, *Price v. Converse, Inc.*, No. 2:24-CV-08091-FLA (EX), 2025 WL 3295119, at *3 (C.D. Cal. Sept. 30, 2025) (dismissing CIPA claim for lack of standing under *TransUnion* and *Popa*, finding allegations that defendant used software to gather plaintiff's "device and browser information, geographic information, and referral tracking" for the purpose of creating "highly personalized and universally unwanted marketing efforts" relied on a mere "broad theory that the common law protected privacy rights—pitched at a high level of generality— [which] does not align with the analysis adopted in *TransUnion*"); *Dawidzik v. Tesla, Inc.,* No. EDCV 25-01982-KK-SPX, 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025) (dismissing CIPA claim, finding allegations that defendant "embedded its HTML scripts with three tracking pixels that caused the user's browser to transmit certain data to third-party servers" were insufficient to establish an Article III concrete injury under *TransUnion* and *Popa*).

While this Court previously found similarly-situated plaintiffs to have sufficiently alleged Article III standing in *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025), that decision pre-dated *Popa* and largely relied on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). But in *Popa,* the Ninth Circuit clarified that to the extent *In re Facebook* can be read to suggest that "a plaintiff necessarily enjoys Article III standing when suing under a statute that protects a substantive right to privacy," that contention now "finds no support in *TransUnion*." *See Popa*, 153 F.4th at 794; *see also Dawidzik*, 2025 WL 3786963, at *3 n.2 (distinguishing *Motorola* as pre-*Popa* authority). Without the benefit of *Popa*, this Court in *Motorola* did not consider whether the information allegedly tracked was so *sensitive* that its alleged collection and dissemination rose to the level of a traditional privacy harm. *See Motorola Mobility LLC*, 2025 WL 1939957, at *6. Under that analysis, as required by *TransUnion* and *Popa*, Plaintiffs do not have standing here.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**B.    Plaintiffs Fail to State a Claim for Invasion of Privacy or Intrusion Upon Seclusion**

The Court should dismiss Plaintiffs' claims for invasion of privacy and intrusion upon seclusion pursuant to Rule 12(b)(6) for largely the same reasons Plaintiffs' claims fail for lack of standing: they do not allege invasion or intrusion upon sensitive, private information.

To assert invasion of privacy and intrusion upon seclusion claims, Plaintiffs must plausibly allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive[.]" *Motorola Mobility LLC*, 2025 WL 1939957, at *9 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601) (explaining that both claims have "similar elements" and courts "consider the claims together"); *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 287, 211 P.3d 1063, 1073 (2009) ("The right to privacy in the California Constitution sets standards similar to the common law tort of intrusion.").[1]

The sensitive nature of the information allegedly invaded or intruded upon is essential to both prongs. First, to sufficiently allege a reasonable expectation of privacy in the data tracking context, the Ninth Circuit has explained that "*both* the nature of collection and the sensitivity of the collected information are important. . . we must examine whether the data itself is sensitive *and* whether the manner it was collected . . . violates social norms." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 603 (emphasis in original). Second, to decide whether the alleged intrusion was "highly offensive," courts consider "the likelihood of serious harm to the victim," which includes the alleged sensitivity of the information intruded upon. *Cousin*, 681 F. Supp. 3d at 1126-27 (dismissing invasion of privacy and intrusion claims arising from browsing activity because such information was not "highly offensive" as a matter of law but denying dismissal of same claims based on "alleged disclosure of sensitive health information").

Here, taking Plaintiffs' allegations as true (as required at the pleading stage), Luxottica allowed Third Parties to learn routine, commercial behavior—that Plaintiffs voluntarily browsed

---

[1] The invasion of privacy claim includes the additional requirement that Plaintiffs "possess a legally protected privacy interest," *see Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1125 (S.D. Cal. 2023), which Plaintiffs fail to allege for the reasons explained *supra* in Section A, and this claim should be dismissed for that additional reason.

public retail websites and searched for glasses and t-shirts. Plaintiffs do not allege that any confidential or sensitive information—such as health or financial information—was tracked or disclosed. Thus, as a matter of law, Plaintiffs have failed to allege disclosure of sufficiently sensitive information that meets the "highly offensive" requirement. *See e.g.*, *Phillips*, 74 F.4th at 995-96 ("plaintiffs do not show that the type of information contained in the records—names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views and associations—is so sensitive that another's access to that information 'would be highly offensive to a reasonable person'") (citation omitted)); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (holding disclosure of user's browsing history, URLs, and unique ID to third party was not highly offensive and that "[e]ven disclosure of personal information, including social security numbers, does not constitute an egregious breach of the social norms to establish an invasion of privacy claim") (internal quotations omitted); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding disclosure of unique device identifier number, personal data, and geolocation information to third party was not highly offensive).

Additionally, while Plaintiffs allege that Luxottica violated its representation concerning cookie tracking, collection of web information does not meet the high bar of "highly offensive" conduct simply because the defendant allegedly breached its own privacy policy. *See e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987-88 (N.D. Cal. 2014) (dismissing intrusion claims, holding that Google's disclosure of user's personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, and declared preferences to third party, in violation of its own privacy policy, was not highly offensive).

Luxottica recognizes that the Court did not dismiss the privacy claims in *Motorola Mobility LLC*, *see* 2025 WL 1939957, at *10, but Luxottica respectfully suggests that the Court should reach a different conclusion here for two reasons.

***First***, the Court in *Motorola* did not consider *In re Facebook*'s instruction that "whether the data itself is sensitive" is a necessary component to the reasonable expectation of privacy prong. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 603. The Court should do so here. The importance of this requirement is underscored by the Ninth Circuit's post-*Motorola* decision

in *Popa*, which rejected standing allegations of a "free-roaming privacy right at common law" without sufficient facts that "implicate a similarly sensitive sphere" as those recognized to be concrete harms. *Popa*, 153 F.4th at 791-92; *see also Phillips*, 74 F.4th at 995-96. If such allegations fail at the threshold standing juncture, they necessarily fail here too.

***Second***, related to the "highly offensive" prong, Plaintiffs' allegations here are simply not on par with the allegations asserted in the caselaw the Court relied on in *Motorola*, all of which involved the invasion or intrusion of sensitive information. *See Motorola Mobility LLC*, 2025 WL 1939957, at *10 (citing *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942-43 (N.D. Cal. 2023); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022); and *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 40 (1994)). In *Katz-Lacabe*, the court found a "highly offensive" invasion because "[p]laintiffs allegations extend[ed] to '**sensitive health and personal safety information**'" and "such allegations of data collection would go well beyond the 'routine commercial behavior' of collecting contact information for sending advertisements." 668 F. Supp. at 942 (emphasis added). Similarly, in *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, the district court found Facebook's conduct "highly offensive" at the pleading stage because it shared plaintiffs' "**sensitive** user information." 402 F. Supp. 3d at 797 (emphasis added). In *In re Meta Pixel Healthcare Litig.*, Meta's conduct was "highly offensive" because it allegedly "disclos[ed] **protected health information** without authorization." 647 F. Supp. 3d at 800–01 (emphasis added). Lastly, in *Hill*, the court found that allegations of "[d]irect observation of urination by a monitor" implicated a sensitive enough invasion to survive the pleading stage. 7 Cal. 4th at 43.

In sum, the bar for Plaintiffs to clear on both the reasonable expectation of privacy and the "highly offensive" prongs is to sufficiently allege an invasion of sensitive information, which they fail to do because there is simply nothing sensitive about Plaintiffs' voluntary, public retail browsing for glasses and t-shirts. Accordingly, Plaintiffs' invasion of privacy and intrusion upon seclusion claims should be dismissed for failure to state a claim.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

### C.       Plaintiffs' CIPA Claims Should Be Dismissed

The Court should dismiss Plaintiffs' CIPA claims for three reasons. First, the claims are time-barred for Plaintiffs Aldana and Kambick. Second, Plaintiffs' claims premised on the use of an alleged "pen register" should be dismissed for all Plaintiffs because the cookies and corresponding software alleged in the Complaint do not meet the statutory definition of a "pen register." Lastly, Plaintiffs' claims alleging that Luxottica should be secondarily liable for aiding Third Parties' "wiretapping" of Plaintiffs' information shared with Luxottica fails because Plaintiffs do not allege that the Third Parties learned the contents of the communications in transit as required by the wiretapping statute.

### 1.       Plaintiffs Aldana's and Kambick's CIPA Claims Are Barred by the Statute of Limitations

On the face of the Complaint, Plaintiffs Aldana's and Kambick's CIPA claims are barred by the one-year statute of limitations. *See Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404, at *5 (N.D. Cal. Nov. 24, 2025) (statute of limitations for a CIPA claim is one year). Plaintiffs contend that the delayed discovery rule applies to their claims because they only knew of Luxottica's alleged violations through counsel. Compl. ¶ 16. But "[t]o invoke the delayed discovery doctrine, a plaintiff must plead facts to show '(1) the time and manner of discovery <u>and</u> (2) the inability to have made earlier discovery despite reasonable diligence." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (emphasis in original) (citation omitted). Plaintiffs plainly fail to allege the time of discovery through counsel and thus, cannot avail themselves of the delayed discovery rule. But even if, for the sake of argument, Plaintiffs are given the benefit of the "delayed discovery rule" and the date Plaintiffs notified Luxottica of their claims is used as the date the statute of limitations began to run, both Aldana's and Kambick's claims are still plainly time-barred.

Aldana alleges that "[o]n or about April 27, 2024" he notified Luxottica of his intent to pursue claims that Luxottica "caused third-party cookies and corresponding data to be stored on consumers' devices and/or transmitted to third parties when they visit the Websites despite consumers' clear rejection of such third-party cookies." Compl. ¶ 18. He did not file those claims

until 602 days later, on December 19, 2025, well past the one-year statute of limitations. Accordingly, Aldana's CIPA claims are time-barred.

Kambick alleges that "[o]n or about December 5, 2023," Kambick notified Luxottica that it allegedly "caused third-party cookies and corresponding data to be stored on consumers' devices and/or transmitted to third parties when they visit the LensCrafters Website despite consumers' clear rejection of such third-party cookies." Compl. ¶ 17. Yet Kambick waited to file this Complaint for more than two years. While Kambick alleged that her claims were tolled during arbitration, that does not save her claims. Kambick filed a demand for arbitration on August 12, 2024, 251 days after sending her notice. *Id*. ¶¶ 19-20. On May 29, 2025, the arbitrator issued an order holding that Kambick's claims were not subject to arbitration. *Id*. ¶ 24. Kambick waited another 205 days before filing the Complaint on December 19, 2025. Thus, even after subtracting the duration of the arbitration, the remaining 456 days between her notice and the filing of the Complaint is beyond the one-year limit.

Given these significant delays, Plaintiffs Aldana and Kambick allege that they are entitled to equitable tolling (Compl. ¶ 25), but Plaintiffs fail to plead any facts showing "reasonable and good faith conduct" to justify their respective delays, as required. *See Pemberton*, 2025 WL 3268404, at *6 ("Plaintiff is not entitled to equitable tolling because no complaint allegations support an inference of reasonable and good faith conduct in waiting nine and a half months" to file suit); *de Ayora*, 2025 WL 3707561, at *6 (dismissing CIPA claims as untimely, finding that plaintiff failed to allege good faith and reasonableness necessary for equitable tolling when plaintiff waited eight months after arbitration decision to join the case as a plaintiff).

Thus, on the face of the Complaint, Plaintiffs Aldana's and Kambick's CIPA claims should be dismissed as time barred.

**2.      Plaintiffs' CIPA Claims Under § 638 Should Be Dismissed Because the Alleged Third-Party Cookies Are Not "Pen Registers"**

Plaintiffs' pen register claims fail because Plaintiffs do not plausibly allege that the Third-Party cookies and corresponding software described in the Complaint satisfy the statutory definition of a "pen register."

13

California Penal Code § 638.51(a) prohibits "install[ing] or us[ing] a pen register or trap and trace device" without a court order under specific circumstances. CIPA defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, **but not** the contents of a communication." Cal. Pen. Code § 638.50(b) (emphasis added).[2] Plaintiffs allege that "[t]he Third-Parties' cookies and the corresponding software code installed by Defendant on each of the Websites are each 'pen registers' because they are 'device[s] or process[es]' that 'capture[d]' the 'routing, addressing, or signaling information'—including, the IP address and user-agent information—from the electronic communications transmitted by" Plaintiffs' devices. Compl. ¶ 223. But the alleged Third Parties' cookies cannot be pen registers because Plaintiffs also allege that the cookies record and decode contents of communications. *See* Compl. ¶ 50, ¶ 62, ¶ 211 (alleging that the Third-Party cookies and code give the Third Parties the capability "to use the contents of conversations they collect" and "learn[] the contents or meaning" of the electronic communications), ¶ 225 (admitting that only **some** of the information collected by the cookies and corresponding software does not constitute content, meaning some of the information collected **does** constitute content). These allegations—that the cookies and corresponding software collect *both* routing information and content—necessarily remove the cookies and corresponding software from the definition of a "pen register" under CIPA.

While two recent courts have found that a device or process that allegedly collects *both* routing information and contents could meet the definition of a pen register,[3] this Court should depart from that incorrect conclusion for at least four reasons: (1) the plain and unambiguous language of CIPA's definition of pen register requires exclusion of a device that records content, even if it also records routing information; (2) the statutory rule against surplusage confirms that this reading is correct; (3) this reading is consistent with, and reinforced by, California's privacy

---

[2] For purposes of simplicity, Luxottica will refer to "dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted" as simply "routing information."

[3] *See In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) (Pitts, J.); *Gabrielli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *12 (N.D. Cal. Aug. 29, 2025) (Orrick, J.)

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

statutory scheme considered as a whole, which differentiates between, on the one hand, pen registers and trap and trace devices (which do not collect contents) and, on the other hand, wiretaps (which collect contents); and (4) this reading is consistent with well-established Fourth Amendment jurisprudence on the capabilities and definitions of pen registers.

*__First__*, under the plain and unambiguous language of the statute, a device or process that records or decodes the contents of a communication is simply not a pen register. That is true *regardless* of whether the device or process *also* collects routing information. The nature of the pen register definition is "a device or process that does A, but not B." Cal. Pen. Code § 638.50(b). Basic tenets of logic and statutory interpretation thus mandate the conclusion that a device or process that does **both** A **and** B is not a pen register. The phrase "but not" is unambiguous, exclusionary language that creates a definitional boundary: what comes before is included in the definition and what comes after is categorically excluded. The plain meaning of "but not the contents of a communication" unambiguously conveys that the presence of characteristic B (recording contents) disqualifies a device from the definition. Courts have interpreted the very similar plain language of the CIPA "trap and trace device" definition—which includes the same definitional exclusionary language as the CIPA pen register definition (*i.e.*, the "but not the contents of communications")— accordingly. For example, in *Kishnani v. Royal Caribbean Cruises Ltd.*, the court held that under the plain language of CIPA, defendant's website and related software was not a "trap and trace device" because the plaintiff alleged that the website and software collected contents of communications. No. 25-CV-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025); *see also Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (concluding that if Tiktok software "collects content information from communication between the parties" then it "is not a trap and trace device and § 638.50 does not apply"); *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at **2-3 (Cal. Super. Ct. Apr. 01, 2025) (sustaining demurrer on CIPA claim because plaintiff alleged that web software captured contents of communications and thus the "limiting phrase" in CIPA definition excluded software from trap-and-trace definition). As the *Price* court explained, "neither a pen register nor a trap and trace device can decode the contents of a communication." *Id*. at *3. Rather, "the crucial

distinction from other devices" is that a pen register "is designed to capture information <u>about the communication,</u> but <u>not the content of the communication</u> itself." *Id*. (emphasis in original).

***Second***, inaccurately interpreting the statute to include a device or process that records *both* contents and routing information would violate the rule against surplusage. Under that canon of statutory interpretation, courts must presume that legislatures do not use superfluous language in statutes. *See In re Saldana*, 122 F. 4th 333, 342 (9th Cir. 2024) ("[C]ourts must construe a statute so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (citations omitted). If ***any*** device or process that collects routing information is a pen register, regardless of whether it also collects content information, the entire phrase "but not the contents of a communication" performs no limiting function whatsoever and is entirely superfluous. If the California Legislature intended to define a pen register as a device that merely has the capability to record/decode routing information regardless of whether it also records/decodes content, it would have written "a device that records dialing, routing, addressing, or signaling information" and stopped there. Instead, the California Legislature affirmatively specified that content recording is ***excluded*** from the definition.

***Third***, California's broader privacy law framework demonstrates that pen registers (and trap-and-trace devices) necessarily do not include devices that capture content. Specifically, California's privacy statutes expressly treat the interception or wiretapping of contents of communications (*see* Cal. Penal Code § 629.50 and § 631) distinctly from the interception of routing information through use of a pen register or trap-and-trace device (*see* Cal. Penal Code §§ 638.52-53). This distinction is meaningful: because content surveillance implicates greater privacy interests, California imposes much more stringent requirements on law enforcement when collecting the contents of communications versus collecting mere routing information. For example, to obtain authorization to wiretap or intercept the contents of communications, the Attorney General or district attorney must submit an extensive written and sworn application to the presiding superior court judge, including, *inter alia*, a "full and complete" statement of facts establishing necessity and explaining why normal, non-content-collecting surveillance techniques have failed or are too risky. *See* Cal. Penal Code § 629.50(a)(1-8). By contrast, to obtain

authorization to use a pen register, a peace officer may apply to any magistrate, and the application may even be made and approved orally under certain circumstances. Cal. Penal Code §§ 638.52-53. In short, a pen register is easier to obtain because, crucially, it does ***not*** collect contents. To collapse the definitions such that a content-collecting device could be categorized as a mere pen register would undermine important protections embedded in California law.

***Fourth***, reading the pen register definition to exclude content-capturing devices has been long recognized in the Fourth Amendment context. The Supreme Court has explained that given the "limited capabilities" of pen registers and the well-established understanding that "pen registers do not acquire the contents of communications"—the use of a pen register by law enforcement generally does not tread upon a legitimate expectation of privacy. *Smith v. Maryland*, 442 U.S. 735, 741 (1979) ("a pen register differs significantly from the listening device employed in *Katz*, for pen registers do not acquire the contents of communications"); *United States v. New York Tel. Co.,* 434 U.S. 159, 167 (1977) ("[A] law enforcement official could not even determine from the use of a pen register whether a communication existed" because pen registers only disclose the "means of establishing communication"). This well-established history lends support to the only reading supported by the plain language of the statute—a pen register as defined by CIPA does not include a device or process that collects the contents of communications even if it also collects routing information.

In sum, Plaintiffs' pen register claim should be dismissed for failure to allege that the Third-Party cookies and corresponding software are "pen registers" under the plain and unambiguous language of CIPA.

### 3.   Plaintiffs Fail to State a Wiretapping Claim Under CIPA § 631(a)

Plaintiffs fail to state a claim under CIPA § 631(a) because they do not allege facts sufficient to meet any of the four prongs of the statute. In particular, § 631(a) makes it unlawful for a person to:

> (1) "by means of any machine, instrument, or contrivance, or in any other manner, intentionally tap[] or make[] any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument";

(2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit";

(3) "use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; and

(4) "aid[], agree[] with, employ[], or conspire[] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above . . ."

Cal. Penal Code § 631(a). Here, Plaintiffs allege that Third Parties wiretapped Plaintiffs' communications with Luxottica concerning their browsing for glasses and t-shirts. *See e.g.*, Compl. ¶ 208; *see also id.* ¶¶ 209-15. Plaintiffs do not allege that Luxottica is the wiretapper and Luxottica is a party to its own communications with Plaintiffs; it therefore cannot be held liable under clauses (1)-(3) of the statute. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 (CIPA "contain[s] an exemption from liability for a person who is a 'party' to the communication").

Plaintiffs' theory instead appears to be that Luxottica should be held liable under clause (4), as an alleged aider of the Third Parties' interceptions. *See e.g.*, Compl. ¶ 210. However, in order to establish secondary liability under clause (4), Plaintiffs must necessarily allege that the Third Parties violated one of the first three clauses. *See Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561-VC, 2025 WL 2971090, at *3-4 (N.D. Cal. Oct. 17, 2025). Plaintiffs fail to do so here.

A violation under clause (3) "is contingent upon a finding of a violation of the first or second clause[.]" *Swarts v. Home Depot, Inc.,* 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023) (Tigar, J.). Clause (1) is "not implicated here because nobody tapped a 'telegraph or telephone wire, line, cable, or instrument." *Eating Recovery*, 2025 WL 2971090, at *4 (citing *Swarts*, 689 F. Supp. 3d at 743-44 (collecting cases)). So, "the threshold question is whether [the Third Parties] violated the second clause of Section 631(a)." *Id.* at *4.

Plaintiffs fail to allege a primary violation of clause (2) because Plaintiffs fail to allege facts sufficient to show *both* that the Third Parties intercepted Plaintiffs communications with Luxottica while the communications were "in transit" and that the Third Parties "read, attempt[ed] to read, or [] learn[ed] the contents or meaning of" the alleged communications while the same were in transit. *See* Cal. Penal Code § 631(a)(2).

18

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

***First***, the Complaint's only references to the Third Parties allegedly intercepting Plaintiffs' communications with Luxottica "in transit" are purely conclusory or merely restate the language of CIPA. Compl. ¶¶ 66, 200, 203, 211. These allegations are insufficient to state a claim. *See e.g., Swarts*, 689 F. Supp. 3d at 745 (dismissing Section 631 claim where complaint did not "indicate *when* the interception occurs," and noting that "conclusory allegations fail to support a claim under § 631(a)"); *de Ayora*, 2025 WL 3707561, at *7 (finding that "Plaintiffs' mere assertion that Defendants or third parties acquire the communications contemporaneously, without factual support, is insufficient to survive Defendants' motion to dismiss"); *Valenzuela v. Keurig Green Mountain, Inc*., 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (finding plaintiff failed to state a claim under the second clause of Section 631(a) because plaintiff did "little more than restate the pleading requirement of real time interception"); *see also Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (finding "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [someone] is intercepting [the plaintiff's] data in transit"); *Licea v. Am. Eagle Outfitters*, 659 F. Supp. 3d 1072, 1084-85 (C.D. Cal. 2023) (same); *In re Vizio, Inc., Consumer Priv. Litig*., 238 F.Supp.3d 1204, 1228 (C.D. Cal. 2017)  (motion to dismiss granted on federal wiretapping claim because plaintiff did not sufficiently allege how the communication was intercepted besides a "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'").

***Second***, Plaintiffs have not sufficiently alleged that the Third Parties attempted to "read" or "learn" Plaintiffs' alleged communications with Luxottica ***while the same were in transit***—as required to state a claim under clause (2). *Gutierrez v. Converse Inc.*, No. CV 23-6547-KK-MARX, 2024 WL 3511648, at *7 (C.D. Cal. July 12, 2024), *aff'd*, No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) (allegations that user's messages were redirected to third party "does not establish" interception or that the third party "reads or attempts to read or learn the contents of such messages" while in transit); *Eating Recovery*, 2025 WL 2971090, at *6 (under Section 631(a), "you must do something more than just intercept the communication while it is in transit to be held liable"). While the phrases "read" or "learn" are not defined by Section 631, "courts generally conclude that liability under prong two of section 631 requires some effort at understanding the

substantive meaning of the message, report or communication" while the same is in transit. *Torres v. Prudential Fin., Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088, at \*5 (N.D. Cal. Apr. 17, 2025) (quotations omitted). Here, the pattern of conduct by these Third Parties, as Plaintiffs allege it, is that the Third Parties "obtain and store" data, and only attempt to learn the contents of the communications, i.e.—make some effort at understanding the substantive meaning of the communications—*after* they allegedly collect it. *See e.g.*, Compl. ¶¶ 70-71 (Adobe "obtain[s] and store[s]" data and later aggregates it with "other data" to create consumer behavior profiles); ¶ 90 (Google's cookies allow it to "obtain and store" user data); ¶ 115 (same for facebook.com cookies); ¶ 119 (same for LiveRamp cookies); ¶ 124 (same for additional Third-Party cookies). Such allegations are insufficient under Section 631(a). *See Eating Recovery*, 2025 WL 2971090, at \*5 (Meta's obtaining and storing data alone "can't reasonably be considered 'reading' or 'learning' the contents of the communication"); *James v. Allstate Ins. Co.,* No. 23-CV-01931-JSC, 2023 WL 8879246, at \*3 (N.D. Cal. Dec. 22, 2023) (dismissing Section 631(a) claim, holding that "[p]laintiff's allegation that . . . 'data is stored or can be accessed by [Defendant]' is insufficient to support a plausible inference [Defendant] attempted to read or learn the contents of the communication while in transit");  *R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 948060, at \*7 (N.D. Cal. Mar. 28, 2025) (dismissing section 631(a) claim, finding that allegations that Google collected and stored data for later analysis was insufficient to plausibly allege that "Google views or reads the information while it is in transit"); *see also Popa*, 153 F.4th at 793 ("we have always identified something *beyond retention alone* that resulted in an injury of the sort recognized by the Supreme Court") (citing *Phillips*, 74 F.4th at 993).

Plaintiffs' deficiencies here are not mere technicalities. They are failures to satisfy important prerequisites in a *criminal* statute and reflective of the larger issue that "there is reason to question whether the Legislature intended for CIPA to apply to the type of conduct implicated by this case at all." *Eating Recovery*, 2025 WL 2971090, at \*6 (stating that "using a third-party company to perform data analytics for web traffic is worlds different from wiretapping and eavesdropping" and courts should not be "quick to assume" that "the Legislature really intend[ed] to subject companies . . . to criminal liability for using third-party software to track website activity" or "criminalize the

use of web traffic data"). Reflective of a broader incongruity between Plaintiffs' theory of liability and CIPA's criminalization of wiretapping, Plaintiffs fail to allege that Luxottica aided the Third Parties' ability to both intercept and learn Plaintiffs' alleged communications with Luxottica while the same were in transit. Accordingly, Plaintiffs' CIPA wiretapping claims should be dismissed.

### D.    Plaintiffs' Equitable Claims Should Be Dismissed

Plaintiffs' California constitutional invasion of privacy claim and unjust enrichment claim should be dismissed because Plaintiffs fail to allege that they lack an adequate remedy at law and fail to allege standing to request an injunction.

Both the invasion of privacy and unjust enrichment claims are equitable claims. *See Cousin*, 681 F. Supp. 3d at 1127–28 ("California's 'constitutional provision protecting the right of privacy" only "supports a cause of action for an injunction" and not "a private right of action for damages"); *Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1078 (N.D. Cal. 2009), *aff'd*, 633 F.3d 1067 (Fed. Cir. 2010) (holding that under California law, "[t]here is little doubt that unjust enrichment is an equitable claim"). And it is axiomatic that "[t]o obtain any equitable relief in federal court, a plaintiff must allege that they lack an adequate remedy at law." *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *4 (N.D. Cal. July 1, 2024) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal of claims for equitable restitution for failure to sufficiently allege that plaintiff lacks an adequate remedy at law)).

Here, Plaintiffs do not sufficiently allege that they lack an adequate remedy at law. Instead, their allegations focus on monetary relief and economic damages. *See* Compl. ¶¶ 186-88; *see also id.* at p.84 (Prayer for Relief seeking "[a]n award of compensatory damages, including statutory damages"). Plaintiffs only allege in conclusory fashion that without their other claims, "Plaintiffs would have no adequate legal remedy." *Id.* ¶ 251. These allegations "will not do at the pleading stage" and dismissal is appropriate. *See e.g.*, *Hubbard*, 2024 WL 3302066, at *4 (dismissing unjust enrichment and other equitable claims where plaintiffs' "allegations of harm focus on economic injuries already suffered" and failed to plausibly allege "that they lack an adequate remedy at law"); *Chiulli v. Am. Honda Motor Co.*, 690 F. Supp. 3d 1038, 1062 (N.D. Cal. 2023) (same); *Moore v. Rodriguez*, No. 20-cv-01481-BAS-BGS, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021)

21

(dismissing invasion of privacy claim because the plaintiffs only sought "damages, not an injunction, as relief"); *Cousin*, 681 F. Supp. 3d at 1127–28 (same).

Even if Plaintiffs had adequately alleged that they were seeking equitable relief, Plaintiffs lack standing to seek an injunction because they fail to allege any "real and immediate threat of repeated injury." *See e.g.*, *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 906 (N.D. Cal. 2020). Instead, Plaintiffs clearly state that while they "desire" to browse Luxottica's Websites in the future, they will not do so until an injunction is entered (Compl. ¶¶ 140, 150, 163). These "some day intentions" do not support a finding of "actual or imminent injury" under Article III. *See Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018); *Kisil*, 2025 WL 2589000, at *2 (plaintiffs failed to demonstrate that data breach created an imminent and substantial risk sufficient to support injunctive relief). Accordingly, Plaintiffs' equitable claims should be dismissed.

**E.      Plaintiffs' Fraud Claim Should Be Dismissed for Failure to Allege Damage**

Plaintiffs fail to plausibly allege the damage element required to assert their fraud claim. The elements of a common law fraud claim in California, each of which must satisfy Rule 9(b), are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Walsh v. Dollar Tree Stores, Inc.*, No. 25-CV-01601-SVK, 2025 WL 2939229, at *20 (N.D. Cal. Oct. 16, 2025) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)). Plaintiffs fail to allege "resulting damage" because "Plaintiffs have not plausibly alleged that they would either sell their data or pay anything to protect their data." *Walsh*, 2025 WL 2939229, at *20. Instead, Plaintiffs only vaguely allege that "Defendant's actions caused damage to and loss of Plaintiffs' and Class members' property right to control the dissemination and use of their personal information and communications." *See* Compl. ¶ 236. Plaintiffs' allegations fall woefully short and do not explain how the value of Plaintiffs' alleged "Private Communications" diminished by virtue of Luxottica's alleged conduct. Rather, the Complaint alleges only generally that "[t]he value of the Private Communications . . . can be quantified." *See id*. ¶ 128. Allegations that general "personal data" is valuable to "[c]ompanies" says nothing about whether Plaintiffs sustained resulting damages. *See e.g.*, *id.* ¶ 129. Accordingly, Plaintiffs' allegations of resulting

damages are insufficient, and the claim should be dismissed. *See Walsh*, 2025 WL 2939229, at \*20; *see also Hubbard*, 2024 WL 3302066, at \*9 (finding plaintiffs failed to "allege facts explaining *how* Defendants' collection and use of their information reduces the value of that information") (emphasis in original); *Griffith v. Tiktok, Inc.*, 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023) ("In the absence of allegations that [p]laintiff incurred actual financial losses, for example because she wished to sell her browsing data but was unable to do so or would be paid less for the data, she has not plausibly alleged economic injury.").

### F.    Plaintiffs Aldana and Moore Fail to State Any Claim Under Rule 9(b) Standards

Plaintiff Aldana's and Plaintiff Moore's claims should be dismissed for failure to comply with Rule 9(b). Rule 9(b) requires allegations "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Williams*, 384 F. Supp. 3d at 1052 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). This includes the "who, what, when, where, and how" of the fraudulent course of conduct. *Id.* (citation omitted).

Here, Plaintiffs Aldana and Moore fail to sufficiently allege when the misconduct giving rise to their claims occurred. Plaintiff Moore alleges that "[d]uring the last year, Plaintiff Moore visited the Oakley Website to browse information about Oakley products on one or more occasions." Compl. ¶ 131. Similarly, Plaintiff Aldana alleges that he "visited the Oakley Website to browse information about Oakley products on one or more occasions during the last four years." *Id.* ¶ 141. This "level of generality" is insufficient under Rule 9(b) because Luxottica cannot "determine what specific representations regarding cookies were made on [its] websites on the specific dates that [Plaintiffs] visited those websites or determine how the websites were using any cookies placed on users' devices on those specific dates." *See Wiley v. Universal Music Grp., Inc.*, No. 25-CV-03095-PCP, 2025 WL 3654085, at \*10 (N.D. Cal. Dec. 17, 2025) (plaintiffs allegations "that they visited specific UMG websites at some unspecified point in the last four years" were insufficient under Rule 9(b)); *de Ayora*, 2025 WL 3707561, at \*4 (dismissing claims under Rule 9(b) because plaintiffs only alleged visiting defendants' websites "sometime" during the four-year class period).

Thus, Plaintiff Aldana's and Plaintiff Moore's claims should be dismissed for failure to comply with Rule 9(b).

### G.   Plaintiffs' Claims Based on Websites They Never Saw Should Be Dismissed

If the Court does not dismiss the Complaint in its entirety, the Court should at least dismiss Plaintiffs' claims related to the Luxottica Websites they did not view, or strike those allegations, because Plaintiffs have no standing to assert claims about misrepresentations on other Websites when they did not view those other Websites themselves. *See e.g.*, *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1197 (N.D. Cal. 2014) ("A party does not have standing to challenge statements or advertisements that she never saw."); *Gustavson v. Wrigley Sales Co.*, No. 12-CV-01861-LHK, 2014 WL 60197, at *9 (N.D. Cal. Jan. 7, 2014) ("[T]o the extent Gustavson asserts claims based on statements appearing on a Wrigley website that Gustavson does not claim to have viewed, these claims fail for lack of standing"); *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6 n.14 (N.D. Cal. July 11, 2012) (striking allegations pertaining to non-purchased products pursuant to Fed.R.Civ.P. 12(f)).

Moreover, Plaintiffs do not plead sufficient facts to support that Luxottica's Websites were sufficiently similar. Instead, after asserting allegations specifically about the Oakley Website, the Complaint simply concludes that the "other Websites similarly cause consumers' devices to transmit user data to third parties—even after consumers reject cookies by clicking or selecting the "Reject" button—on those Websites." Compl. ¶ 47. Plaintiffs' conclusory contention also contradicts other paragraphs that allege the Websites differ in appearance and that different Websites deploy different cookies or combinations of cookies. *See e.g.*, *id.*, ¶¶ 1-3. No facts in the Complaint explain how the other Websites uniformly cause the same alleged violations.

## V.   CONCLUSION

For the foregoing reasons, Luxottica's Motion should be granted, and the Complaint should be dismissed in its entirety. In the alternative, Plaintiffs' allegations regarding Luxottica's other websites that Plaintiffs did not visit should be dismissed or stricken.

DATED: February 13, 2026

**BLANK ROME LLP**

By: */s/ Melissa Fundora Murphy*

Melissa Fundora Murphy (*admitted pro hac vice*)
Glen L. Abramson (*pro hac vice forthcoming*)
Serena S. Gopal (*pro hac vice forthcoming*)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Telephone: 215.569.5334
melissa.murphy@blankrome.com
glen.abramson@blankrome.com
serena.gopal@blankrome.com

Ana Tagvoryan (SBN 246536)
Jessica A. McElroy (SBN 299919)
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434
ana.tagvoryan@blankrome.com
jessica.mcelroy@blankrome.com

*Attorneys for Defendant*,
LUXOTTICA OF AMERICA INC.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST