**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON MOORE, DANIEL ALDANA, AND HOPE KAMBICK, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LUXOTTICA OF AMERICA, INC.,<br><br>Defendant. | Case No. 4:25-cv-10840-JST<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT LUXOTTICA OF AMERICA INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT<br><br>Judge Jon S. Tigar<br><br>Hearing Date: May 7, 2026<br>Hearing Time: 2:00 PM<br>Courtroom: Courtroom 6<br><br>Complaint Filed: December 19, 2025 |

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. LEGAL STANDARD .......... 4

IV. ARGUMENT .......... 4

A. Plaintiff Pleads a Concrete Injury. .......... 4

B. Plaintiff Adequately Pleads Common Law Privacy Claims. .......... 8

C. Plaintiff Adequately Pleads Violations of CIPA. .......... 10

1. The Complaint Pleads a Pen Register Violation. .......... 11

2. The Complaint Pleads a Wiretapping Violation. .......... 15

D. Plaintiff Adequately Plead Equitable Claims for Invasion of Privacy and Unjust Enrichment. .......... 20

E. Plaintiff Adequately Plead Fraud, Deceit, and Misrepresentation. .......... 21

F. Plaintiffs Satisfy Rule 9(b). .......... 22

G. Plaintiffs Have Standing to Sue for Defendant's Violations on All Its Websites. .......... 24

H. Plaintiffs Request Leave to Amend If Necessary. .......... 25

V. CONCLUSION .......... 25

## TABLE OF AUTHORITIES

***Cases***

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023 .......... 9, 21

*Brown v. Natures Path Foods, Inc.*,
2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) .......... 23

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 9

*Carpenter v. United States*, 585 U.S. 296 (2018) .......... 15

*D'Angelo v. Penny Opco, LLC,*
*No. 23-cv-0981-BAS-DDL,* 2023 U.S. Dist. LEXIS 191054 (S.D. Cal Oct. 24, 2023) .......... 17

*D'Antonio v. Smith & Wesson Inc.*,
No. 25-cv-03085-PCP, 2026 U.S. Dist. LEXIS 32257 (N.D. Cal. Feb. 17, 2026) .......... 13

*De Ayora v. Inspire Brands, Inc.*,
|No. 25-cv-03645-AGT, 2025 U.S. Dist. LEXIS 264583
N.D. Cal. Dec. 22, 2025) .......... 17, 23, 24

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) .......... 25

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952
(N.D. Cal. Oct. 17, 2025) .......... 18, 19

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 16

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 4

*Esparza v. UAG Escondido A1 Inc.*,
2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) .......... 17

*Flanagan v. Flanagan*,
27 Cal. 4th 766, 117 Cal. Rptr. 2d 574, 41 P.3d 575 (2002) .......... 13

*Freeman v. Indochino Apparel, Inc.*,
443 F.Supp.3d 1107 (N.D. Cal. 2020) .......... 21

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503
(N.D. Cal. August 29, 2025) .......... passim

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836
(N.D. Cal. July 14, 2025) .......... passim

*Griffith v. Tiktok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) .......... 22

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
61 Cal. 4th 988 (2015) .......... 20

*Heeger v. Facebook, Inc.*
509 F. Supp 3d 1182 (N.D. Cal. 2020) .......... 21

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) .......... 8

*Hubbard v. Google LLC*,
No. 19-cv-07016-SVK, 2024 U.S. Dist. LEXIS 117876
(N.D. Cal. July 1, 2024) .......... 22

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 10

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 4

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) (Pitts, J.) .......... 12, 13, 14, 19

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 9

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 9, 17

*Jackson v. Linkedin Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) .......... 18

*James v. Allstate Ins. Co.*, No. 3:23-cv-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .......... 19

Javier v. Assurance IQ, LLC, No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) .......... 11

*Junhan Jeong v. Nexo Fin. LLC*, No. 21-cv-02392-BLF, 2022 U.S. Dist. LEXIS 10089 (N.D. Cal. Jan. 19, 2022) .......... 21

*Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 U.S. Dist. LEXIS 120002 (N.D. Cal. June 24, 2025) .......... 14

*Krzyzek v. Openx Techs., Inc.*, No. 25-cv-05588-SI, 2026 U.S. Dist. LEXIS 15195 (N.D. Cal. Jan. 27, 2026) .......... 7

*Licea v. Am. Eagle Outfitters*, 659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 17

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861(N.D. Cal. 2012) .......... 24

*Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .......... 14

*Pemberton v. Rest. Brands Int'l, Inc., No. 25-cv-03647-JSC*, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025) .......... 23

*People v. Cole*, 38 Cal. 4th 964, 44 Cal. Rptr. 3d 261, P.3d 669 (2006) .......... 12

*Pereda v. GM LLC*, No. 21-cv-06338-JST, 2022 U.S. Dist. LEXIS 242771 (N.D. Cal. Dec. 9, 2022) .......... 21

*Popa v. Microsoft Corp.*, No. 24-14, 2025 U.S. App. LEXIS 21946 (9th Cir. Aug. 26, 2025) .......... passim

*Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Ct. Apr. 01, 2025) .......... 14

*R.C. v. Sussex Publrs., LLC*, No. 24-cv-02609-JSC, 2025 U.S. Dist. LEXIS 59491 (N.D. Cal. Mar. 28, 2025) .......... 19

*Rodriguez v. Ford Motor Co.*, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) .......... 10

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 WL 214552
(N.D. Cal. Jan. 25, 2022) .......... 18, 22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) .......... 25

*Semien v. Pubmatic Inc.*,
No. 25-cv-03164-SI, 2026 U.S. Dist. LEXIS 15196
N.D. Cal. Jan. 27, 2026) .......... 8

*Shah v. MyFitnessPal, Inc.*,
No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193, at *6
(N.D. Cal. Jan. 27, 2026) .......... 7, 13

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) .......... 4

*Skidgel v. California Unemployment Ins. Appeals Bd.*,
12 Cal. 5th 1, 282 Cal. Rptr. 3d 639 P.3d 196 (2021) .......... 12

*Spokeo Inc. v. Robins*,
578 U.S. 330, 340 (2016) .......... 4

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067
(N.D. Cal. Oct. 1, 2024) .......... 16, 17

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d (N.D. Cal. 2023) .......... 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 4

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 16, 17

*Victor v. R.C. Bigelow, Inc.*,
No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550
(N.D. Cal. Mar. 14, 2014) .......... 24

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652
(N.D. Cal. Oct. 16, 2025) .......... passim

*Wiley v. Universal Music Grp., Inc.*,
No. 25-cv-03095-PCP, 2025 U.S. Dist. LEXIS 261303
(N.D. Cal. Dec. 17, 2025) .......... 20, 23, 24

*Yamasaki v. Zicam LLC*,
No. 21-cv-02596-HSG, 2021 U.S. Dist. LEXIS 205494
(N.D. Cal. Oct. 25, 2021) .......... 25

***Statutes***

Cal. Penal Code § 631(a) .......... 10

Cal. Penal Code § 631(a) .......... 10, 11, 15, 18

Cal. Penal Code § 632 .......... 18

Cal. Penal Code § 638.50(b) .......... 12, 13, 18

Cal. Penal Code § 638.51 .......... 11

Cal. Penal Code § 638.51(b) .......... 13, 14

***Rules***

Fed. R. Civ. P. 12(b)(6) .......... 4

Fed. R. Civ. P. 8 .......... 15, 20

## I. INTRODUCTION

Plaintiffs Brandon Moore, Daniel Aldana, and Hope Kambick bring this class action suit against Luxottica of America, Inc. ("Defendant" or "Luxottica") for intentionally aiding third parties in the collection of Plaintiffs' and other users' private information against those website users' express instructions, and in violation of Defendant's express promise not to do so. In particular, Defendant surreptitiously placed third-party tracking cookies on each Plaintiffs' device after they explicitly rejected cookies by either" (1) clicking the "Reject All" button on a cookie consent banner on a Defendant's website (shown immediately below), or (2) by turning off all third party "analytics," "social," and "marketing" cookies in the "Privacy Preferences" window on a Defendant website (shown below, line 2):







As a result, Defendant enabled the third parties to collect large swaths of Plaintiffs' data, including, without limitation, "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and geolocation data," despite Defendant's

explicit representation that it would disable such transmissions. Plaintiffs have properly asserted claims to hold Defendant liable for such misconduct. *See Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *21–22 (N.D. Cal. July 14, 2025) (denying motion to dismiss alleging defendant's website violated privacy laws by using tracking cookies after expressly promising it would not do so); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *21 (N.D. Cal. August 29, 2025) (same).

Defendant attempts to avoid liability by arguing that Plaintiffs lack standing to sue. But the privacy harms alleged here are concrete under Article III because they are identical or similar to traditionally recognized harms such as invasion of privacy. The Complaint further adequately alleges that Plaintiffs had a reasonable expectation of privacy when each clicked the "Reject All" cookies button or turned off all non-essential cookies before browsing the Website, and that Luxottica's invasion of privacy was highly offensive. Plaintiffs have also adequately pled their claims for CIPA violations, fraud, and unjust enrichment.

In sum, the Court should deny Defendant's motion to dismiss and/or strike.

## II. BACKGROUND

When consumers visit one of Defendant's websites (e.g., www.oakley.com or www.lenscrafters.com, (collectively, the "Website[s]" [1])), Defendant displays a pop-up cookie consent banner in which it offers Website users the option to determine how they are tracked and how their personal data is used. ECF 1 ¶ 1. Defendant uses two basic configurations, which are largely interchangeable for purposes of this lawsuit. For the Oakley Website, the cookie consent banner states, "We use cookies for marketing and to analyze and improve your experience on our

[1] Defendant owns and operates nineteen eyeglass retailing chains within California, each with its own website. In addition to Oakley and Lenscrafters, these include sunglasshut.com (the "Sunglass Hut Website"); arnette.com (the "Arnette Website"); contactsdirect.com (the "Contacts Direct Website"); costadelmar.com (the "Costa Website"); essilor.com (the "Essilor Website"); eyebuydirect.com (the "EyeBuyDirect Website"); foreyes.com (the "ForEyes Website"); fostergrant.com (the "Foster Grant Website"); glasses.com (the "Glasses.com Website"); nativeyewear.com (the "Native Eyewear Website"); oliverpeoples.com (the "Oliver Peoples Website"); pearlevision.com (the "Pearle Vision Website"); persol.com (the "Persol Website"); ray-ban.com (the "Ray-Ban Website"); readers.com (the "Readers Website"); targetoptical.com (the "Target Optical Website"); vogue-eyewear.com (the "Vogue Eyewear Website")

website. By continuing to use our website or closing this banner, you consent to our use of cookies. To learn more, please visit our Privacy Policy." *Id.* Defendant then purportedly gives Website users the option, through two interactive buttons, to "Reject All" cookies or "Accept All" cookies, including those used for targeting, performance, and functional purposes. *Id.* ¶¶ 1-2, 39-46. The lenscrafters.com website contains essentially the same notice, but requires users to "Accept All" cookies or "manage" their selections by navigating to a "cookie manager" page, which then displays a "Privacy Preferences" window in which the user can turn "analytics," "social," and "marketing" cookies off. *Id*. ¶¶ 1-2, 51-54.

Consistent with their typical practice, each Plaintiff read the cookie consent banner and then clicked the "Reject All" cookies button or turned off non-essential cookies via the Privacy Preferences, "indicating [her] choice and/or agreement to decline or reject all cookies and tracking technologies in use on the Website." *Id.* ¶¶ 41 and 52.

Despite its representations that users could "Reject All" cookies, "[e]ven after users elect to 'Reject All' cookies, Defendant surreptitiously causes several third parties—including Adobe, Inc. (Adobe), Google LLC (DoubleClick and Google Analytics), Meta Platforms, Inc. (a.k.a. Facebook), LiveRamp (Pippio), and many more (the 'Third Parties')—to place and/or transmit cookies that track users' website browsing activities and eavesdrop on users' private communications on the Website." *Id*. ¶¶1-6. Defendant thereby caused the collection and dissemination of users' personal information, "including browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" (collectively "Private Communications"), to the Third Parties. *Id*. ¶¶ 44 & 56.

The Third Parties use the personal information to profile users and target them with advertising for the Third Parties' own financial gain. *Id*. ¶¶ 5, 34, 37-38, 49, 61, 71, 102, 113-116, 123-124, and 182. This is the exact type of tracking and data sharing that Plaintiffs and other Website users sought to avoid when they clicked "Reject All" and/or turned off third party tracking cookies.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

## IV. ARGUMENT.

### A. Plaintiffs Plead a Concrete Injury.

Plaintiffs have standing under Article III because they allege a "concrete" injury, which is one that is "real" as opposed to "abstract," or hypothetical. *See Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016). Alleged intangible harms are concrete if they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," and invasions of privacy (such as disclosure of private information and intrusion upon seclusion) have long been recognized at common law as concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *accord Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir. 2025) (the alleged injury must simply be similar in kind to a traditionally recognized harm, such as intrusion upon seclusion). A right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). The California Invasion of Privacy Act (CIPA) was "intended to protect these historical privacy rights." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). Accordingly, internet users, such as Plaintiffs, who allege that their data was collected in violation of an expectation of privacy have "standing to bring claims for invasion of privacy, intrusion upon seclusion, as well as claims under . . . CIPA, because they adequately alleged privacy harms." *Id.* at 598–99; *accord In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing

purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization.").

In *In re Facebook,* the Ninth Circuit found standing where plaintiffs alleged that Facebook's tracking practices and profiles "would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives," and thus "sufficiently alleged a clear invasion of the historically recognized right to privacy." 956 F.3d at 599.

Here, Plaintiffs alleges they suffered concrete harm when Defendant represented that they could reject being tracked by third-party cookies on the Websites but Defendant still downloaded third party code and allowed tracking using such cookies, thereby enabling the Third Parties to collect wide swaths of Plaintiffs' detailed and personal data and communications. ECF 1 ¶¶ 1–6, 26-130. Despite Defendant's suggestion to the contrary, Plaintiffs identify the specific categories of data collected by third parties against their express wishes and contrary to Defendant's representations. *See* ECF 1 ¶¶ 4, 48, 55, 60, 70, 90, 115, 119, 122-124, 126-127. And, like in *In re Facebook*, the tracking continues across websites and across multiple browsing sessions, for the purpose of compiling extensive user profiles. ECF 1 ¶¶ 5, 32-33, 37, 49, 61, 69-70. These allegations set forth a concrete harm to Plaintiffs' privacy interests that parallel traditionally recognized harms (indeed, their claims for invasion of privacy and intrusion upon seclusion are historically recognized causes of action). *See In re Facebook*, 956 F.3d at 598–99. Courts in this District have repeatedly found standing in cases involving substantially the same alleged conduct, harm, and claims. *See, e.g., Motorola*, 2025 U.S. Dist. LEXIS 133836, at *16–17 ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *accord Haleon*, 2025 U.S. Dist. LEXIS 169503, at *15 (same); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, at *29 (N.D. Cal. Oct. 16, 2025) (finding "loss in the privacy of such data supports Article III standing").

The Ninth Circuit recently reiterated that courts "assess whether 'plaintiffs have identified a close historical or common-law analogue for their asserted injury,'" and found no need to revisit

the conclusions reached in *In re Facebook* and *Eichenberger* (while cautioning against an overly expansive reading of those cases). *See Popa v. Microsoft Corp.*, No. 24-14, 2025 U.S. App. LEXIS 21946, at *24 (9th Cir. Aug. 26, 2025).[2] After noting that the decision in *In re Facebook* was based on Facebook's tracking practices and compilations of large profiles without users' consent, the court found that the decision in *In re Facebook* properly "accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries." *Id.* at *23–24. That same reasoning requires denying Defendant's motion here. Indeed, Defendant's conduct caused a *more egregious version* of the historical harm implicated in *Facebook*: not only did Defendant enable broad tracking of users across multiple websites without their consent regardless of the sensitivity of the activities and communications (the same harm that the Ninth Circuit has found sufficient for standing, *see Popa,* 2025 U.S. App. LEXIS 21946, at *23–24), but Defendant did so in defiance of its promise not to. ECF 1 ¶¶ 1-6, 17-18, 46, 58, 138, 148, and 161.

In arguing that disclosure of the Plaintiffs' information does not establish the injury in fact required for Article III (ECF 15, pp. 5-7), Defendant both (a) ignores the directly applicable cases discussed above and (b) mischaracterizes the allegations of the Complaint. Most notably, the Complaint is not merely alleging that Defendant tracked their Website interactions "without consent," but that Defendant did so in direct violation of its promise not to do so. Defendant gave Plaintiffs the opportunity to indicate whether they wanted to be tracked for marketing purposes. Plaintiffs used that opportunity to specify that they did not. Defendant then did so anyway. That is inherently more offensive than merely doing so without first asking whether it was okay.

Defendant relies on *Popa v. Microsoft Corp*., 153 F.4th 784, 791 (9th Cir. 2025) to argue "defendant's tracking of user interactions on a retail website does not cause 'any kind of harm that is remotely similar to the highly offensive interferences or disclosures that were actionable at common law.'" ECF 15 at 6. In *Haleon*, Judge Orrick considered and rejected the exact argument

[2] The portions of *Popa* finding that the plaintiff did not adequately plead standing in that case are distinguishable. In *Popa*, the session replay software was limited to collecting data about the use of a single website for the defendant's *own use*. 2025 U.S. App. LEXIS 21946, at *3–5. Here, by contrast, Defendant causes tracking beyond its own website and for the benefit of third parties, who build profiles as in *In re Facebook*. Also, in *Popa*, the defendant did not seek plaintiff's consent, create an expectation of privacy, and then defy plaintiff's rejection of the software.

Defendant makes here. *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *18–19. There, the court found that the tracking technologies in at issue in *Popa* "are . . . distinguishable, both in users' interactions with them and their capabilities" from those at issue here. *Id*. at *20. For example "Popa never purported to have expressly 'reject[ed]' the tracking technology at issue." *Id*. And while "the session-replay technology [in *Popa*] was not alleged to track anything beyond her interactions with the website she chose to visit, and the information gathered was only alleged to be used by the owner of that website," the plaintiff in *Haleon*—like Plaintiffs here—"alleges that the cookies . . . store[d] on users' devices allow third parties 'to track and collect data in real time regarding . . . user input data,' which includes '[t]he information the user entered into the Websites' form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information, demographic information,' and also 'device information, session information, and/or geolocation data.'" *Id*. (citation omitted). Further, as is the case here, the court in *Haleon* found *Popa* distinguishable because "Haleon's website explains what its cookies are capable of," i.e. that the cookies were used to "count visits and traffic sources so *Haleon* can measure and improve the performance of its website[s]," and for "tracking users' browsers across other sites and building up a profile of users' interests." *Id*. at *20–21 (cleaned up); *compare* ECF 1 ¶¶ 37-38, 49-50, 69-127 (alleging similar disclosures from the Websites regarding the capabilities of cookies). Ultimately, the court in *Haleon* determined that the plaintiffs "allegations are sufficient to show Article III standing." *Id*. This Court should do the same, for much the same reasons. *See also Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193, at *6 (N.D. Cal. Jan. 27, 2026) (rejecting Popa's application to similar allegations, reasoning "Plaintiffs here allege that MFP told them that their individual information would not be shared because they could opt out of unnecessary cookies, and yet it was shared. This harm is thus similar in kind to a harm recognized as actionable at common law.").

Other courts reject *Popa*'s application where the defendant is not merely collecting the information but also creating, or aiding in the creation of, user profiles. *See Krzyzek v. Openx Techs., Inc.*, No. 25-cv-05588-SI, 2026 U.S. Dist. LEXIS 15195, at *8 (N.D. Cal. Jan. 27, 2026) ("Unlike in *Popa*, which involved non-sensitive browsing activity on a single pet supply website, here

plaintiffs allege that OpenX created or added to detailed user profiles by tracking their interactions across the internet…"); *Semien v. Pubmatic Inc.*, No. 25-cv-03164-SI, 2026 U.S. Dist. LEXIS 15196, at *12 (N.D. Cal. Jan. 27, 2026) (same). Here, Plaintiffs allege that Defendant "allowed third parties to collect enables the Third Parties to (and they in fact do), *inter alia*, create consumer profiles containing detailed information about a consumer's behavior, preferences, and demographics; create audience segments based on shared traits (such as Millennials, Californians, tech enthusiasts, etc.); and perform targeted advertising and marketing analytics." ECF 1 ¶ 182. Further, "[t]he consumer profiles are and can be used to further invade Plaintiffs' and users' privacy, by allowing third parties to learn intimate details of their lives, and target them for advertising and other purposes, as described herein, thereby harming them through the abrogation of their autonomy and their ability to control dissemination and use of information about them." *Id*. Contrary to Defendant's argument, *Popa* reinforces *In re Facebook*, and the allegations here go beyond the activity at issue in *Popa* such that Plaintiffs have standing.

**B. Plaintiffs Adequately Pleads Common Law Privacy Claims.**

California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require that Plaintiff show: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook*, 956 F.3d at 606; *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009). Plaintiffs plainly allege both elements. ECF 1 ¶¶ 1–6, 39-62, 69, 87, 136-138, 146-149, 160-162, 183-184, 190, 194.

Disputing Plaintiffs' allegation, Defendant argues that they did not have a reasonable expectation of privacy because its conduct violated no "societal norms" and involved no "confidential or sensitive" information. ECF 1 at 9-10. But Plaintiffs do not simply allege that Defendant violated their privacy by itself collecting their browsing activity on the Website; rather, they allege that Defendant knowingly assisted *third parties* in collecting large swaths of their data and communications—including "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data"—***after specifically***

***representing*** to Plaintiffs that it would not do so and that Plaintiffs could browse the Website without being tracked and without their data and communications being shared with third parties. ECF 1 ¶¶ 1–6, 39-62, 69, 87, 136-138, 146-149, 160-162, 183-184, 190, 194.

Given Defendant's ***own representations*** and the scope of the information gathered in direct violation of those representations, Plaintiffs plausibly alleges that they had a reasonable expectation in the data and communications at issue and that Defendant's conduct was highly offensive. *Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *37–39 (finding plaintiffs plausibly alleged that (a) "Dollar Tree *itself* creates a reasonable expectation of privacy when it presents customers with a Cookie Banner permitting them to 'Reject Advertising Cookies'" and (b) the collection of plaintiffs' browsing history, user input data, and geolocation data constituted highly offensive conduct, "considering the 'plus factor' of alleged deceit on the part of Dollar Tree in collecting such information via the Cookie Banner"); *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *23 (court could not conclude on a motion to dismiss that the "alleged transmission via stored cookies of [plaintiff's] browsing data, visit history, website interactions, geolocation information, user input data (including search terms), and other types of data is not a highly offensive invasion of his reasonable privacy expectation"); *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *27 (same); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 937–39 (N.D. Cal. 2023) (Google itself "told users that they could 'go Incognito' and 'browse privately,'" and thus "[b]y browsing privately, plaintiffs could be said to have asserted their expectation of privacy"); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021) (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's own representations that it would not receive such data).

None of Defendant's cases (ECF 15 at 10-11) are on point because none of them address a situation where the defendant enabled third parties to collect a user's data in violation of an *express assurance that such data would not be collected or shared*. Even "more routine data collection practices may be highly offensive if a defendant disregards consumers' privacy choices while simultaneously 'h[olding] itself out as respecting' them." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 292 (3d Cir. 2016)). Moreover, "'courts must be reluctant to reach a conclusion at the pleading stage about

how offensive or serious the privacy intrusion is.'" *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26 (quoting *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019)).

Defendant argues that this Court should not follow *Motorola* because that decision failed to take into account *In re Facebook's* supposed requirement that the data collected be "sensitive," which Defendant asserts was reiterated by *Popa*. ECF 1 at 10-11. But neither of those cases is controlling, because they involved only failure to obtain permission to collect data, not violation of a promise not to conduct or facilitate data collection. Nothing in *In re Facebook* or *Popa* suggests that companies conducting business via the internet have free reign to lie to consumers about privacy and data collection.

The same reasoning applies to Defendant's argument that the "highly offensive" prong is not met. That argument—which is largely redundant with its "sensitive" argument—similarly glosses over the fact that Plaintiffs had indicated to Defendant that they did not want their information shared with third parties. That alone makes the conduct here "highly offensive." Additionally, Defendant blithely assumes that the information Plaintiffs and other visitors browsed was not sensitive because it was not "sensitive health and personal safety" information. But the Websites all involve eyeglasses, which are related to the Plaintiffs' health. Accordingly, the Court should not assume merely on Defendant's assertion that this information is not sensitive.

**C. Plaintiffs Adequately Pleads Violations of CIPA.**

Plaintiffs allege a claim under the fourth clause of Section 631(a). That clause imposes liability on Defendant to the extent it aided, agreed with, or conspired with third parties to violate any of the first three prongs of Section 631(a), namely: (1) intentionally wiretapping Plaintiffs' communications, (2) willfully and without consent attempting to learn the contents or meaning of any communication in transit (i.e., eavesdropping), and/or (3) attempting to use or communicate information obtained as a result of either of the two previous activities. Cal. Penal Code § 631(a); *Rodriguez v. Ford Motor Co.*, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024). "Though written in terms of wiretapping, Section 631(a) applies to Internet communications." Javier v. Assurance IQ, LLC, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31,

2022); *see also Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *45 n.10 (noting "numerous other cases hav[e] applied Section 631(a) to internet communications").

Here, the Complaint alleges Defendant aided the Third Parties in their violation of the second and third clauses of Section 631(a). ECF 1 ¶¶ 204–218.[3] Specifically, the Complaint alleges that Defendant integrated the Website with code that enables the Third Parties to use cookies (in conjunction with pixels and other software) to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." ECF 1 ¶¶ 50 & 62. The Complaint includes extensive allegations describing how the cookies placed by the Third Parties with Defendant's assistance enable the Third Parties to transmit communications between users and Defendant to themselves "in real time." *See, e.g., id.* ¶¶ 39-62. Plaintiffs further demonstrates the plausibility of these allegations by including screenshots showing network traffic that occurs after a user rejects all cookies using the Website's cookie banner and proceeds to browse the Website. *Id*. ¶¶ 45 & 57.

Defendant argues that Plaintiffs' CIPA claims should be dismissed because: (a) Plaintiffs cannot plead both wiretap and pen register claims, and (b) Plaintiffs have failed to allege a wiretap claim. Each of these arguments fails.[4]

**1. The Complaint Pleads a Pen Register Violation.**

Defendant argues incorrectly that "Third-Party cookies and corresponding software" are not pen registers under CIPA § 638.51 because "Plaintiffs also allege that the cookies record and decode contents of communications." MTD at 13-14. According to Defendant, CIPA forecloses the possibility that a device can operate both as a wiretap (recording contents) and a pen register (recording routing information).

As Defendant admits, at least two courts have rejected its reading of CIPA. See MTD at 14 n.3, citing *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) (Pitts,

---

[3] Defendant argues that it is not directly liable to Plaintiffs under the first three clauses of CIPA (ECF 16 at 6–9), but Plaintiffs do not allege such direct liability and therefore respond only with respect to the theories actually pled.

[4] Defendant argues that Plaintiff Aldana's and Plaintiff Kambick's claims are time barred. However, Defendant does not argue that Plaintiff Moore's claims are time barred and therefore the defense does not apply to his claims.

J.); *Gabrielli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *12 (N.D. Cal. Aug. 29, 2025) (Orrick, J.). Defendant nonetheless argues that *In re Meta* and *Haleon* are wrong.

As in *In re Meta* and *Haleon*, the crux of Defendant's argument is that Plaintiffs have plead themselves out of a pen register claim by alleging the cookies and pixels identified in the Complaint capture "contents" of communications. Because Cal. Penal Code § 638.50(b) defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, *but not the contents of a communication*," (emphasis added), Defendant argues that it excludes any device capable of implementing a wiretap from the definition of "pen register."

As Judge Pitts noted:

> The relevant statutory language is ambiguous. On the one hand, that language could be interpreted, as [defendant] contends, to define a pen register as a device that records only "dialing, routing, addressing, or signaling information" and that does not record "the contents of a communication." On the other hand, it could be interpreted to define a pen register as any device that records "dialing, routing, addressing, or signaling information" while clarifying that a device that records only "the contents of a communication" is not a pen register, and is instead subject solely to CIPA's wiretap provisions. The statute does not, through its language alone, clarify whether it establishes two entirely nonoverlapping zones of regulation, as [defendant] contends, or whether a device that collects wiretap content and pen register metadata is subject to both CIPA's wiretap provisions and its pen register provisions.

*In re Meta*, 793 F. Supp. 3d at 1153.

Because CIPA's language is ambiguous, Judge Pitts held that he must "determine the Legislature's intent so as to effectuate the law's purpose." *Id.*, citing *Skidgel v. California Unemployment Ins. Appeals Bd.*, 12 Cal. 5th 1, 14, 282 Cal. Rptr. 3d 639, 493 P.3d 196 (2021), and *People v. Cole*, 38 Cal. 4th 964, 975, 44 Cal. Rptr. 3d 261, 135 P.3d 669 (2006). He further noted that "there is no doubt that the California Legislature, in enacting CIPA, intended 'to protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society. This philosophy appears to lie at the heart of virtually all the decisions construing [CIPA].'" *In Re Meta*, 793 F. Supp. 3d at 1153, quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775, 117 Cal. Rptr. 2d 574, 41

P.3d 575 (2002). The California Supreme Court has thus "instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests." *In re Meta*, 793 F. Supp. 3d at 1153 (internal quotations omitted).

Judge Pitts concluded that Defendant's proposed interpretation of CIPA would lead to the absurd result of exempting surveillance that is *more* intrusive:

> Given CIPA's purpose to protect Californians' privacy, it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications. Under Meta's interpretation of the statute, an entity could escape liability under CIPA's pen register provisions by combining the functionality of a wiretap with that of a pen register. That entity could also escape liability under CIPA's wiretap provisions by utilizing only the information tracked by pen registers and not "read[ing], or attempt[ing] to read ... the contents" of communication. Cal. Penal Code § 631(a). Such an entity could engage in the very conduct that CIPA proscribes—using a pen register without a court order—while escaping liability through a statutory loophole that is available only because that entity collects even more sensitive information (the content of Californians' communications) along with the information recorded by pen registers. In contravention of the California Legislature's intent in enacting CIPA, Meta's proposed loophole would allow any entity to avoid CIPA's pen register provisions simply by employing more intrusive forms of technology.

*In re Meta*, 793 F. Supp. 3d at 1153-54. Judge Pitts further noted that this renders § 638.51(b)'s telecom exception—which allows telecom companies to record routing information when necessary to "operate" or "protect" the telecom network—"superfluous" by giving them free reign to avoid CIPA liability altogether simply by recording "contents." *Id*. at 1154; see also *Haleon*, 2025 WL 2494368 at *12 (J. Orr, adopting Judge Pitts reasoning to reject the same argument); *D'Antonio v. Smith & Wesson Inc.*, No. 25-cv-03085-PCP, 2026 U.S. Dist. LEXIS 32257, at *13-15 (N.D. Cal. Feb. 17, 2026) (J. Pitts, reiterating *In Re Meta* holding while dismissing for failure to allege "contents" of communications); *Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193, at *23-24 (N.D. Cal. Jan. 27, 2026) (same).

Despite this, Defendant argues that the plain language of CIPA mandates its interpretation of § 638.50(b). But Defendant identifies no statutory language that *In re Meta* and *Haleon* did not already consider. The various cases that Defendant cites to the contrary are not persuasive. First, none of them address, much less rebut, Judge Pitts' analysis in *In re Meta*. Moreover, as Defendant's motion admits, those other cases involved "trap and trace" devices, not § 638.50(b)'s definition of

"pen register." See MTD at 15, citing *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 U.S. Dist. LEXIS 120002, at *9 (N.D. Cal. June 24, 2025) ("trap and trace" claims); *Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (same); and *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at **2-3 (Cal. Super. Ct. Apr. 01, 2025) (same). In any event, they are not binding.

Defendant's argument that reading CIPA to allow a single device to operate as both a wiretap and a pen register violates the rule against surplusage is similarly misplaced. Under Plaintiffs' reading, § 638.50(b) defines a category of devices that violate Californian's privacy rights irrespective of whether they record "contents" of communications. That alone—i.e., making it explicit that recording the "contents" is not required to make something a "pen register"—prevents it from being mere surplusage. Defendant's reading also makes the telecom exception set forth in § 638.51(b) superfluous, just like in *Haleon* and *Wiley*, since telecoms would not need the exemption if they could avoid liability simply by recording "contents" as well. Furthermore, Defendant's argument fails to address the possibility that a given device may operate as a pen register in certain circumstances, but a wiretap in others.

Defendant's argument that California's "broader privacy framework" supports its reading is equally specious. Defendant may well be correct that wiretaps are subject to stronger regulation than pen registers, but why does that require that wiretaps and pen registers be mutually exclusive? To the extent a device satisfies both definitions, it will doubtless be subject to the higher requirements of a wiretap. But more importantly, Defendant's reliance on the requirements that Attorneys general, district attorneys, and "peace officer[s]" must meet to obtain a lawful wiretap fails to explain why Defendant—who has no standing to apply for a wiretap under any circumstances—should be allowed to engage in conduct that CIPA forbids law enforcement from doing simply by recording "contents" in addition to routing information. Indeed, this is exactly the absurd result that Judge Pitts rejected in *In re Meta*. Further, Defendant's Fourth Amendment argument relies on a non-sequitur. Even if CIPA's language is ambiguous, such that the legislature's intent must be examine, the Supreme Court's decision that pen registers raise fewer Fourth Amendment is not evidence of legislative intent.

Defendant's discussion of Fourth Amendment jurisprudence is also incomplete. In *Carpenter v. United States*, 585 U.S. 296, 320 (2018), the Supreme Court held that, where individual items of information are collated by a third party, the privacy interest at stake must be assessed by the "depth, breadth, and comprehensive reach" of such collection, as well as "the inescapable and automatic nature of its collection." *Id.* Accordingly, the Court held that a phone companies' records of complete geolocation data deserved Fourth Amendment protection. *Id*. Here, as in *Carpenter*, "the Court is obligated—as subtler and more far-reaching means of invading privacy have become available to the Government—to ensure that the progress of science does not erode [privacy] protections." *Id*. at 320 (internal quotation omitted). Thus, the Court must look to the overall invasion of privacy arising from the profiles created by the Third Parties, not the privacy interests attached to each item of data in isolation. In the same way that a phone company's comprehensive stored records about a person's phone usage create a different privacy interest than an isolated phone number, Plaintiffs here have a privacy interest in comprehensive records of their internet usage.

Defendant also fails to account for the possibility that Plaintiffs are allowed to plead their wiretapping and pen register claims in the alternative under Federal Rule of Civil Procedure 8. That is, even if adding "content" to what is collected makes something a wiretap under CIPA, Plaintiffs are allowed to plead in the alternative that, if it turns out a specific software device is not a wiretap, it may be a pen register.

For all the above reasons, Plaintiffs have adequately alleged a CIPA pen register violation.

**2. The Complaint Pleads a Wiretapping Violation.**

**a. The Complaint Pleads Interception "In Transit."**

CIPA § 631(a) states unlawful wiretapping occurs when anyone "willfully and without consent of all parties to the communication, or in any unauthorized manner, ***reads, or attempts to read, or to learn*** the contents or meaning of any message, report, or communication while the same is in transit . . . ***or who uses, or attempts to use***, in any manner, or for any purpose, or to communicate in any way, ***any information so obtained*** . . . ." Cal. Penal Code § 631(a) (emphasis added). For Plaintiffs' wiretapping claims under § 631.51(a), clause 4 (aiding and abetting), the underlying wiretap violation must involve an interception "contemporaneous with the sending or

receipt of the message." *See Valenzuela v. Keurig Green Mountain, Inc*., 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). "[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025); CITE MORE CASES.

Plaintiffs clearly allege that timing element. Specifically, the Complaint alleges that the pixels for each Third Party listed were called and run contemporaneously with the viewing of each web page, thereby transmitting the tracked communications to the respective Third Parties in real time. See ECF 1 ¶¶ 4 (the cookies "permitted the Third Parties to track and collect data in real time"), 33 (the cookies enabled third parties to "surreptitiously track in real time and collect users of the Websites' personal information, such as their browsing activities and private communications"), 44 (the cookies enabled third parties "to collect user data in real time that discloses Website visitors' Private Communications"), 46 (interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains), 58 (same), 49 (Defendant cause the Third Parties to "data on users' behaviors and communications, including Private Communications"), 61 (same), 138 (same, for Moore), 148 (Aldana), 161 (Kambick), and third parties "read, attempted to read, and/or learned the contents or meaning of electronic communications . . . while the electronic communications were in transit"). Plaintiffs further identify specific examples of cookies transmitting data in *real time*. ECF 1 ¶¶ 26–62. Thus, Defendant's contention that Plaintiffs fail to plead interception while "in transit" must be rejected. This is not a case where Plaintiffs are merely repeating the words "in real time"; the Complaint alleges specific facts that establish a real time process of interception.

This establishes that the interception occurs "contemporaneous[ly] with the sending or receipt of the message." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023); *see also Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."); *St. Aubin v. Carbon Health Techs., Inc*., No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *17 (N.D. Cal. Oct. 1, 2024) ("while . . . in transit" means "contemporaneously"). These "allegations that

[communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement" at the pleadings phase. *Esparza v. UAG Escondido A1 Inc.*, 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Ruling otherwise would require Plaintiffs to prove their case before discovery. *D'Angelo v. Penny Opco, LLC, No. 23-cv-0981-BAS-DDL,* 2023 U.S. Dist. LEXIS 191054, at *8 (S.D. Cal Oct. 24, 2023); *see also St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *15 ("A pleading standard [requiring explanation of how and when interception occurs] would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder."). Thus, Plaintiffs' allegations that the Third Party code intercepted users' communications as they were made adequately pleads that their communications were intercepted "in transit."

The various cases Defendant relies upon do not support dismissal. None of those complaints contained the level of detail presented by this Complaint. For example, *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d, at *745 (N.D. Cal. 2023), held that merely alleging that "[d]uring Defendant's live chat sessions, online traffic occurs between the customer's browser and several liveperson.net subdomains" fails to establish that interception occurs while chats are "in transit." In contrast, the Complaint here is not merely alleging that the communications are contemporaneous, but that it arises from code introduced onto users' computers by Third Parties with Defendant's assistance while users are communicating with Defendants. That code then records the users' communications (i.e., intercepts them) as they are being sent to Defendant by the user (i.e., "in transit") and contemporaneously transmits them to the Third Parties' servers. Similarly, in *De Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645-AGT, 2025 U.S. Dist. LEXIS 264583, at *20 (N.D. Cal. Dec. 22, 2025), the complaint had no description of "how the software works or how the interception occurs." This was also the basic problem in *Licea v. Am. Eagle Outfitters*, 659 F. Supp. 3d 1072, 1084-85 (C.D. Cal. 2023) ("bare allegations" failed to explain how interception occurred), and *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1228 (C.D. Cal. 2017) (noting complaint's use of "inscrutable" graphics without useful explanation). In *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023), plaintiffs failed to plead that the

third party had the "capability to use its record of the interaction for [their own] purpose." And in *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022), the plaintiff had uploaded the data to the defendant's servers, and defendant had only preserved a copy. The Complaint here is nothing like these cases.

Defendant next argues incorrectly that Plaintiffs' CIPA claim fails because they do not allege that the third parties "read or attempted to read" their communications "in real time during the transmission." MTD at 14. More specifically, Defendant relies on an overly narrow reading of § 631(a) to imply that a human eavesdropper must actively read the communication while it is "in transit" to violate § 631(a). But this is neither true nor necessary for pleading a CIPA claim. First, "CIPA prohibits both reading ***or learning*** the contents of any message, report, or communication in transit over any wire, line, or cable without authorization ('interception') ***and using or communicating any information so obtained ('use')***." *Jackson v. Linkedin Corp*., 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) (emphasis added). The statute's plain language also encompasses "attempt[ing]" to read or learn the contents of the communication, and as well as "us[ing]" the information intercepted. See, e.g., *Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952, at *13 (N.D. Cal. Oct. 17, 2025) (noting in dicta that § 631(a) plausibly covers "attempts" to intercept via pixels and cookies).[5] Neither of these—either of which is sufficient to establish a wiretapping violation—requires a human eavesdropper to actively read the communication as it is occurring. Indeed, "use" of the intercepted information almost necessarily occurs *after* the communication. Moreover, this interpretation of § 631(a) would lead to absurd results. For example, anyone would apply a wiretap and simply record conversations for review at a later date, then argue that they did not intercept the communication because they did not "read" it or "learn" its contents until after the transmission occurred.

[5] *Eating Recovery* opined that CIPA's "attempt . . . to learn" language plausibly covered third party recording of consumer data as pled here, but worried that would render CIPA § 632 superfluous. But § 632 is not superfluous with § 631(a), because § 632 covers "amplification" devices that capture non-electronic communications "among the parties in the presence of one another" (e.g., parabolic microphones that amplify in-person conversations from a distance).

This is exactly the kind of loophole that led the *Haleon* and *In re Meta* courts to reject Defendant's narrow definition of "pen register"; reading the statute so narrowly defeats the legislature's express purpose of maximizing protection of citizens' privacy rights. And like the "but not the contents of communications" language in § 638.50(b), it is at best ambiguous whether "***reads, or attempts to read, or to learn*** the contents or meaning of any message, report, or communication while the same is in transit . . . ***or who uses, or attempts to use***, in any manner, or for any purpose, or to communicate in any way, ***any information so obtained***" is meant to be limited to an actual human digesting the communication or information, or should be read more expansively to include automated attempts to record such information for later analysis. *See Eating Recovery,* 2025 U.S. Dist. LEXIS 207952, at *13 (noting CIPA's ambiguity); *In re Meta*, 793 F. Supp. 3d at 1153 (noting California Supreme Court instructions to interpret CIPA broadly to maximize privacy protections). Here, to the extent the Third Parties listed in the complaint record or log the information in real time for later use, the "attempt" to read *or learn* the information occurs "while" the communication is "in transit."

Defendant urges this Court to apply holdings born from disparate facts to dismiss Plaintiffs' claims. The Court should not be duped. In *James v. Allstate Ins. Co.*, No. 3:23-cv-01931-JSC, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023), the complaint alleged nothing more than the recording of a communication by the vendor a website had hired for the purpose of data retention; the problem in *James* was that third party was just a subcontractor assisting the defendant with its own operations; unlike here, there was no allegation that the third party read or attempted to read the communication for its own purposes. In *Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952, at *13 (N.D. Cal. Oct. 17, 2025), the third party actively filtered out communications to prevent their storage, which contradicted any allegation that it was trying to read or learn their contents. *R.C. v. Sussex Publrs., LLC*, No. 24-cv-02609-JSC, 2025 U.S. Dist. LEXIS 59491, at *22 (N.D. Cal. Mar. 28, 2025), adopted Defendant's proposed interpretation, but focused entirely on the words "reads" and "learns," without considering whether "attempts" could include those performed by recording while "in transit." And *Popa*, 153 F.4th at 793, did not

even discuss the "in transit" requirement; the quote that Defendant cites has nothing to do with the question of statutory interpretation before the Court.

### D. Plaintiffs Adequately Plead Equitable Claims for Invasion of Privacy and Unjust Enrichment.

It is well established that concrete fears of invasion of privacy support an equitable claim for injunctive relief. See, e.g., *Wiley v. Universal Music Grp., Inc.*, No. 25-cv-03095-PCP, 2025 U.S. Dist. LEXIS 261303, at *26-27 (N.D. Cal. Dec. 17, 2025) (denying motion to dismiss unjust enrichment claim arising from allegations website lied about use of cookies); *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *41 ("Courts in this District have regularly held that even if plaintiffs have suffered no economic loss from the disclosure of their plausibly private information, they are allowed to proceed through the pleadings stage with a claim for unjust enrichment to recover the gains that a defendant realized from its allegedly improper conduct."). Moreover, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Wiley,* 2025 U.S. Dist. LEXIS 261303, at *26-27 (N.D. Cal. Dec. 17, 2025), quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), and *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998 (2015).

Here, as described above, Plaintiffs have pled a concrete violation of their privacy. ECF 1 ¶¶ 4, 48, 55, 60, 70, 90, 115, 119, 122-124, 126-127. Plaintiffs have also adequately alleged that it would be unjust for Defendant to retain the benefit of invading Plaintiffs' and Class members' privacy and any profits earned thereon. ECF 1 ¶¶ 246-251. Indeed, *Wiley* and *Haleon* each denied a motion to dismiss invasion of privacy and unjust enrichment claims based on facts and allegations directly parallel to those here. *Wiley,* 2025 U.S. Dist. LEXIS 261303, at *9-16 and *26-27; *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *41.

Defendant mistakenly argues that Plaintiffs' equitable claims cannot survive because they alleged economic damages and failed to plead an inadequate remedy at law. Neither argument passes muster. Defendant parrots the oft-rejected argument that *Sonner* precludes pleading both legal and equitable remedies, but it is well established that Fed. R. Civil Procedure 8 allows pleading both in the alternative. *Freeman v. Indochino Apparel, Inc.*, 443 F.Supp.3d 1107, 1114 (N.D. Cal.

2020) (Rule 8 allows equitable claims to be pled in the alternative at the pleading statge); *Junhan Jeong v. Nexo Fin. LLC*, No. 21-cv-02392-BLF, 2022 U.S. Dist. LEXIS 10089, at *92 (N.D. Cal. Jan. 19, 2022) (collecting cases and concluding that "*Sonner* has limited applicability to the pleading stage because it pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial."); *see also Pereda v. GM LLC*, No. 21-cv-06338-JST, 2022 U.S. Dist. LEXIS 242771, at *36-37 (N.D. Cal. Dec. 9, 2022) (noting court had once applied *Sonner* as defendants suggest, but no longer did so because further analysis had proven this approach wrong). It is also well-established that Plaintiffs allegations that they wish to continue to browse Luxottica websites for information, but cannot do so without fear their interactions will be tracked against their wishes, also parallel allegations that have frequently been held to support injunctive relief.

**E. Plaintiffs Adequately Plead Fraud, Deceit, and Misrepresentation.**

Fraud, deceit and misrepresentation claims require a plaintiff to plead (1) a misrepresentation or omission of material fact; (2) knowledge of falsity; (3) intent to defraud or to induce reliance; 4) justifiable reliance; and (5) resulting damage. *See Heeger v. Facebook, Inc*. 509 F. Supp 3d 1182, 1194 (N.D. Cal. 2020). Plaintiffs have done so. They plead that Defendant "assure[d] visitors that they can choose to Disable All cookies"; that "Defendant's representations, however, were false," because "even though Defendant received notice that certain users . . . did not consent . . . Defendant nevertheless caused the Third Party Tracking Cookies to be placed . . . even for those users who elected to reject all cookies." CAC ¶¶ 1, 40.

Defendant contends that Plaintiffs "fail to allege "resulting damage" because "Plaintiffs have not plausibly alleged that they would either sell their data or pay anything to protect their data." ECF 15 at 22. But this ignores Plaintiffs' allegations regarding invasion of protected interests, misappropriation of their information, and that their information has objective value. *See, e.g*., CAC ¶¶ 16, 104, 128-130, 187-188, 197-198, 216, 235-241, 248. As explained both above and below, Plaintiffs also allege the invasion of their privacy and communications and the loss of control over their personal information, after being assured they could retain control over that information. *Id.* These are recognized, cognizable damages. Plaintiffs "have a stake in the value of their misappropriated data." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) (denying

summary judgment on a claim involving misappropriated data); *see also Rodriguez v. Google*, 2024 U.S. Dist. LEXIS 1290, at *35–36 (N.D. Cal. Jan. 3, 2024) (viable damages model can be based on "[u]ser's willingness to pay to prevent data collection"); *In re Facebook*, 956 F.3d at 599 (a plaintiff can be harmed by loss of control over personal information), 606 (noting a plaintiff can seek disgorgement of profits regardless of whether defendant made plaintiff's property less valuable). This is precisely what Plaintiffs have claimed here. CAC ¶¶ 101-102, 190;. Thus, Plaintiffs adequately plead their fraud, deceit and misrepresentation claims.

The cases cited by Defendant concern what is required to sufficiently allege a diminution in value of certain information, but they do not establish that is the *only* harm a plaintiff can allege in a privacy case. See, e.g., *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, at *51 (N.D. Cal. Oct. 16, 2025) (discussing damages under breach of contract theory, not privacy law); *see also Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 U.S. Dist. LEXIS 117876, at *26-27 (N.D. Cal. July 1, 2024) (addressing damages under generic consumer protection laws, not the CCPA); *Griffith v. Tiktok, Inc.*, 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023) (noting diminution of value was one valid form of damages, but was not adequately pled on the facts before the Court). As such, none of those cases support dismissal here.

**F. Plaintiffs Satisfy Rule 9(b).**

Plaintiffs' allegations satisfy Rule 9(b)'s heightened pleading requirements. As Judge Tigar held when evaluating identical allegations under 9(b)'s standard; "[t]he complaint states that the 'who' is [Defendant]; the 'what' are misrepresentations by [Defendant] through the popup banner offering users the option to ["Disable All" cookies]; the 'when' is the … occasion[s] that [Plaintiff] visited [Defendant's] website … ; the 'where' is on [Defendant's] website; and the 'how' is through the storage of cookies on users' devices that transmit personal information about the users. These allegations satisfy the 'who, what, when, and where' of Rule 9(b)." *Motorola*, 2025 U.S. Dist. LEXIS 133836 at *21–22; *accord Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *36 (N.D. Cal. Aug. 29, 2025) (per "Fed. R. Civ. 9(b), [Plaintiff's] allegations are sufficient for now."). Here, Plaintiffs plead the same who, what, when, and where as to Luxottica's

Websites and the "Disable All" cookie banner displayed on each. *See* CAC ¶¶ 1–2, 37, 104, 107-110, 117-118, 120, 186-87.

As an initial matter, Defendant presents Rule 9(b) argument only for Plaintiffs Moore and Aldana; it does not argue that Plaintiff Kambick, who alleges she visited lanscrafters.com in September 2024, fails to specify "when" the fraud she alleges occurred. Regardless, Plaintiffs Aldana and Moore have alleged "when" they visited the Oakley.com Website; "on one or more occasions during the last four years" for Plaintiff Aldana, CAC ¶ 141, and "[d]uring the last year" for Plaintiff Moore. *Id*., ¶ 131. Courts in this District find those allegations sufficient for defendants to "defend against the charge and not just deny that they have done anything wrong." *Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022). *See Haleon*, 2025 U.S. Dist. LEXIS 169503; *Motorola,* 2025 U.S. Dist. LEXIS 133836 at *21–22; *Pemberton v. Rest. Brands Int'l, Inc., No. 25-cv-03647-JSC*, 2025 U.S. Dist. LEXIS 230964, at *22 (N.D. Cal. Nov. 24, 2025); *Walsh*, 2025 U.S. Dist. LEXIS 204652, at *57 (N.D. Cal. Oct. 16, 2025).

Defendant's Rule 9(b) argument is also a canard because there is no indication that Defendant changed the Websites at any point during the past four years. On its face, the Complaint alleges that the Oakley.com Website displayed the same cookie banner displayed in ECF 1 ¶ 1, misrepresenting to visitors that they can "Disable All" cookies during the entirety of the last four years. *Id.* Unlike the defendants in *Wiley,* 2025 U.S. Dist. LEXIS 261303, at *24-26, or *De Ayora*, 2025 U.S. Dist. LEXIS 264583, at *10-11 *(see* ECF 15, p. 23*)*, Defendant does not have to guess which version of which website's representation Plaintiffs encountered. Moreover, given that Plaintiffs allege that the "what" of Defendant's fraud are "misrepresentations by [Defendant] through the popup banner offering users the option to ["REJECT All" or turn off analytic, social, and marketing cookies]," Defendant would only have to compare changes to its popup banner on each Luxottica Website to "determine what specific representations regarding cookies were made on [the website]" to defend itself. *Compare Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36 (N.D. Cal. Aug. 29, 2025) *with* MTD at 9. But, to Plaintiffs' knowledge, Defendant has not done so.

Accordingly, this Court should follow Judge Tigar and Judge Orrick in their well-reasoned finding that Plaintiffs have satisfied Rule 9(b)'s standard. *Motorola*, 2025 U.S. Dist. LEXIS 133836

at *21–22; *accord Haleon US Inc*., No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *36 (N.D. Cal. Aug. 29, 2025) (per "Fed. R. Civ. 9(b), [plaintiff's] allegations are sufficient for now.").

Defendant's reliance on *Wiley v. Universal Music Grp, Inc*., 2025 U.S. Dist. LEXIS 261303 (N.D. Cal. Dec. 17, 2025) and *De Ayora v. Inspire Brands, Inc*., 2025 U.S. Dist. LEXIS 264583 (N.D. Cal. Dec. 22, 2025) is misplaced. In *De Ayora*, multiple websites were at issue, each with different cookie banners that were updated at different times within the four-year class period. As a result, "[g]iven that the cookie banners were changed during the accused period," Magistrate Judge Tse held that plaintiffs had not pled "when" they visited with enough particularity for the defendant to know *what* misrepresentation was in effect. *Id*. The same factor compelled a similar conclusion in *Wiley*: given the number of websites at issue (including arianagrande.com, icespicemusic.com, universalmusic.com, nickiminajofficial.com, theweekend.com, and lilyachtyofficial.com), the defendant could not determine *what* specific representations regarding cookies were made on *which* website over a four year period. *Wiley*, 2025 U.S. Dist. LEXIS 261303 at *26.

**G. Plaintiffs Have Standing to Sue for Defendant's Violations on All Its Websites.**

Defendant argues that the Court must dismiss or strike Plaintiffs' claims involving Defendant's Websites that Plaintiffs did not view, because Plaintiffs have no standing with respect to unvisited websites. This argument directly parallels the "no standing for unpurchased products" argument typically presented in false advertising cases. *See Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550, at *24 (N.D. Cal. Mar. 14, 2014) (collecting cases, discussing merits of addressing as a question of standing on motion under Rule 12(b)(6) versus at class certification). But there is widespread agreement that plaintiffs can have standing to sue for false advertising of unpurchased products if the products and alleged false claims are substantially identical. *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012).

Here, all of Luxottica's Websites are alleged to run on a common platform and make the same false promise that Defendant will not use online advertising and performance and analytics cookies if visitors decline them. The Complaint identifies the only two apparent types of cookie

banners/controls (i.e., "Reject All" or turning off "analytics," "social," and "marketing" cookies), and alleges that both violate users' privacy by collecting information designated off-limits despite promising not to do so. The claims thus involve physically similar Websites that cause essentially identical injuries giving rise to essentially identical claims. They are thus "substantially similar," *see Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 U.S. Dist. LEXIS 205494, at *6 (N.D. Cal. Oct. 25, 2021) (laying out "substantial similarity" test), such that Plaintiffs have standing to pursue claims involving the related Websites. The fact that the individual Websites may have different specific content (e.g., Oakley glasses versus LensCrafters glasses) is irrelevant to the claims being brought.

Having argued earlier that all screenshots taken of its Websites at any other time then during the Plaintiffs' visits are irrelevant, Defendant next argues that Plaintiffs must include screenshots of every single website listed in the Complaint as run by Defendant. It is obvious that Defendant seeks to immunize itself by creating a pleading standard so strict that the only way to meet it is to document being defrauded while being defrauded, which is absurd, because no one who recognized a transaction as fraudulent would go through with it.

### H. Plaintiffs Request Leave to Amend If Necessary.

"[L]eave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986). Leave to amend is only properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys*., 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiffs request leave to amend to cure the identified deficiencies.

## V. CONCLUSION

For the foregoing reasons, Luxottica's motion to dismiss and motion to strike must be denied in total.

Dated: February 27, 2026

**GUTRIDE SAFIER LLP**

*/s/Anthony J. Patek*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*