**BLANK ROME LLP**
Melissa Fundora Murphy (*admitted pro hac vice*)
Glen L. Abramson (*pro hac vice forthcoming*)
Serena S. Gopal (*pro hac vice forthcoming*)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Telephone: 215.569.5334
melissa.murphy@blankrome.com
glen.abramson@blankrome.com
serena.gopal@blankrome.com

Jessica A. McElroy (SBN 299919)
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434
jessica.mcelroy@blankrome.com

*Attorneys for Defendant*,
LUXOTTICA OF AMERICA INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| BRANDON MOORE, DANIEL ALDANA, and HOPE KAMBICK, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LUXOTTICA OF AMERICA INC.,<br><br>Defendant. | Case No. 4:25-cv-10840-JST<br><br>**REPLY MEMORANDUM OF POINTS IN SUPPORT OF LUXOTTICA OF AMERICA INC.'S MOTION TO DISMISS**<br><br>Date:       May 7, 2026<br>Time:       2:00 p.m.<br>Courtroom:  6<br>Judge:      Jon S. Tigar |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 1

    A. Plaintiffs Fail to Show a Concrete Harm Sufficient for Article III Standing........... 1

        1. Plaintiffs Do Not Establish that Their Information Was Sensitive ............. 2

        2. Plaintiffs' Focus on How the Information Was Collected Is Insufficient.... 4

    B. Plaintiffs' Invasion of Privacy and Intrusion Upon Seclusion Claims Should be Dismissed for Failure to State a Claim ...................................................... 5

    C. Plaintiffs' CIPA Claims Should Be Dismissed........................................................ 8

        1. Plaintiffs Concede that Aldana's and Kambick's CIPA Claims Are Time-Barred.................................................................................................. 8

        2. The Alleged Third-Party Cookies Are Not "Pen Registers"........................ 8

        3. Plaintiffs' Communications Were Not Allegedly Read While in Transit.. 10

    D. Plaintiffs' Equitable Claims Should Be Dismissed.................................................. 11

    E. Plaintiffs' Fraud Claim Should Be Dismissed for Failure to Allege Damage ....... 12

    F. Plaintiffs Aldana and Moore Fail to State Any Claim Under Rule 9(b) Standards ................................................................................................................ 13

    G. At Minimum, Plaintiffs Lack Standing to Bring Claims Based on Other Websites ................................................................................................................. 14

    H. Plaintiffs Should Not Be Granted Leave to Amend................................................ 15

III. CONCLUSION ............................................................................................... 15

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
    713 F. Supp. 3d 623 (N.D. Cal. 2024) ...................................................................... 11

*Barrett v. Apple Inc.*,
    523 F. Supp. 3d 1132 (N.D. Cal. 2021) .................................................................... 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................... 4

*Bradshaw v. Lowe's Companies, Inc.*,
    No. 25CV0742 DMS (MMP), 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ......................... 5

*Brown v. Google LLC*,
    685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................................................. 6, 13

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................................................................... 6

*Carpenter v. United States*,
    585 U.S. 296 (2018) ................................................................................................... 10

*Chiulli v. Am. Honda Motor Co.*,
    690 F. Supp. 3d 1038 (N.D. Cal. 2023) .................................................................... 11

*Daly v. Viacom, Inc.*,
    238 F. Supp. 2d 1118 (N.D. Cal. 2002) .................................................................... 12

*Doe v. Eating Recovery Center*,
    806 F. Supp. 3d 1109 (N.D. Cal. 2025) .................................................................... 11

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020)........................................................................................ 6

*Foley v. Bates*,
    No. C07-0402 PJH, 2007 WL 1430096 (N.D. Cal. May 14, 2007)......................................... 7

*Freeman v. Indochino Apparel, Inc.*,
    443 F. Supp. 3d 1107 (N.D. Cal. 2020) .................................................................... 11

*Fregosa v. Mashable, Inc.*,
    No. 25-CV-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ................................... 9

*Gabrielli v. Haleon US Inc.*,
    No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025)..................... *passim*

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

*Garon v. Keleops USA, Inc.*,
   No. 25-CV-02124-DMR, 2025 WL 2522374 (N.D. Cal. Sept. 2, 2025) ................................ 9

*In re Google, Inc. Priv. Pol'y Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................... 5, 7

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................ 4, 6

*Hubbard v. Google LLC*,
   No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ................................ 13

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal. 2022) ................................................................... 5

*Jeong v. Nexo Fin. LLC*,
   No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ................................ 11

*John Paul Mitchell Sys. v. Eslami*,
   110 F.3d 68 (9th Cir. 1997)................................................................................ 12

*Khamooshi v. Politico LLC*,
   No. 24-CV-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ................................... 3

*Krzyzek v. Openx Techs., Inc.*,
   No. 25-cv-05588-SI, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) ..................................... 3

*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018) ........................................................................ 12

*Lorentzen v. Kroger Co.*,
   532 F. Supp. 3d 901 (C.D. Cal. 2021) ................................................................... 14

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................................. 7

*McZeal v. Blue Castle (Cayman) Ltd.*,
   No. 2:24-CV-06520-RGK-PD, 2025 WL 3899249 (C.D. Cal. Oct. 28, 2025) ............... 10, 15

*In re Meta Pixel Tax Filing Cases*,
   793 F. Supp. 3d 1147 (N.D. Cal. 2025) .................................................................. 8, 9

*Mlejnecky v. Olympus Imaging Am. Inc.*,
   No. 2:10-CV-02630 JAM, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ............................ 14

*Oh v. Fresh Bellies, Inc.*,
   No. CV 24-5417 PSG, 2024 WL 4500727 (C.D. Cal. 2024)............................................ 14

*Pereda v. Gen. Motors LLC*,
   No. 21-CV-06338-JST, 2022 WL 19975388 (N.D. Cal. Dec. 9, 2022) ......................... 11, 12

iv
REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

*Pete v. Facebook Data Breach*,
No. 25-CV-09081-JST, 2026 WL 32635 (N.D. Cal. Jan. 6, 2026) .................................. 8, 15

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) .................................................................................... 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ...................................................................... 2, 3, 4, 14

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Ct. Apr. 01, 2025)................................ 9

*Rodriguez v. Culligan Int'l Co.*,
No. 25-CV-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025)........................... 2

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024)......................................... 13

*Rosenthal v. Wells Fargo Bank, N.A.*,
No. CV 17-4570-GW (KSX), 2018 WL 6118519 (C.D. Cal. Apr. 5, 2018),
*aff'd*, 771 F. App'x 390 (9th Cir. 2019)................................................................... 5

*Semien v. Pubmatic Inc.*,
No. 25-cv-03164-SI, 2026 WL 216333 (Jan. 27, 2026) ............................................ 3

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .................................................................... 9

*Shah v. MyFitnessPal, Inc.*,
No. 25-cv-04430-PCP, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ...................................... 3

*United States v. Flores-Garcia*,
198 F.3d 1119 (9th Cir. 2000)................................................................................. 9

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................. 7

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-CV-01601-SVK, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ........................... 6, 13

*Wiley v. Universal Music Grp., Inc.*,
No. 25-CV-03095-PCP, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025).......................... 11, 13

*Wooten v. BioLife Plasma Services L.P.*,
No. 1:25-CV-00099-KES-SKO, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025)...................... 3

**Statutes**

Cal. Pen. Code
   § 631(a) ................................................................................................................. 1, 10
   § 638.50(b) ................................................................................................................. 9
   § 638.51 ....................................................................................................................... 1

Comprehensive Computer Data and Access Fraud Act ............................................... 12

**Other Authorities**

Fed. R. Civ. P.
   9(b) ....................................................................................................................... 1, 13
   12(b)(1) ........................................................................................................................ 14
   12(b)(6) ........................................................................................................................ 14

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

## I.      INTRODUCTION

Plaintiffs' Opposition (ECF No. 16 ("Opp.")) confirms that Plaintiffs' Complaint should be dismissed in its entirety. First, Plaintiffs lack standing to assert any claim because they cannot demonstrate that any embarrassing, invasive, or otherwise private information was allegedly collected, which is necessary to establish an Article III concrete injury under binding Ninth Circuit precedent.

Second, Plaintiffs do not demonstrate that they had a reasonable expectation of privacy while browsing a public retail website for glasses and t-shirts or that they were injured by highly offensive conduct, both of which are necessary to state a claim for their common law privacy claims.

Third, Plaintiffs' Opposition fails to cure the fatal pleading deficiencies for their CIPA claims because (i) Plaintiffs concede that Aldana's and Kambick's claims are time-barred; (ii) Plaintiffs cannot rebut that the Third Party cookies do not satisfy the statutory definition of a "pen register" under Section 638.51; and (iii) Plaintiffs do not plausibly allege that Third Parties intercepted and read their communications while in transit as required under Section 631(a).

Fourth, Plaintiffs do not refute that they fail to plead a right to equitable relief.

Fifth, Plaintiffs cannot allege resulting damages in support of their fraud claims.

And lastly, Plaintiffs Aldana and Moore do not meet the pleading standard of Rule 9(b).

For all of these reasons, the Complaint should be dismissed in its entirety. At minimum, the Court should dismiss or strike claims based on Websites that Plaintiffs admittedly never saw for lack of standing.

## II.     ARGUMENT

### A.      Plaintiffs Fail to Show a Concrete Harm Sufficient for Article III Standing

Plaintiffs' Opposition fails to meaningfully respond to Luxottica's central argument: Plaintiffs fail to plausibly allege that the information the cookies allegedly collected was sensitive in nature as required to establish Article III standing. *See* Mot. to Dismiss (ECF No. 15 ("Mot.")) at 5-8. Although they do not dispute that sensitivity is an essential prerequisite to standing, Plaintiffs attempt to sidestep the issue by focusing entirely on the allegation that website users clicked on

Luxottica's cookie banner to reject cookies but that cookies were nevertheless deployed. But even where the collection of information is allegedly improper, that fact alone cannot establish the existence of a concrete Article III injury. Plaintiffs must also demonstrate that the information collected was sensitive. Their failure to do so here requires dismissal. *See* Mot. at 7-8.

### 1. Plaintiffs Do Not Establish that Their Information Was Sensitive

First, and most critically, Plaintiffs fail to plead why or how the communications or data allegedly transmitted by the Third-Party cookies was *sensitive* in any way as required to establish Article III standing. *See* Mot. at 6 (citing *Popa v. Microsoft Corp.*, 153 F.4th 784, 786 (9th Cir. 2025) (concluding that plaintiff lacked standing because she "identifie[d] no embarrassing, invasive, or otherwise private information collected")). Undisputedly, Plaintiffs' interactions with Luxottica's Websites (i.e., browsing for glasses and t-shirts) are not sensitive in nature. Accordingly, Plaintiffs attempt to reframe their Complaint as alleging the collection of "wide swaths of Plaintiffs' detailed and personal data and communications" across the internet, without identifying what personal data was supposedly collected. *See* Opp. at 5:11. Plaintiffs point to conclusory allegations stating that the Third Parties create consumer profiles to "learn intimate details of their lives" (Opp. at 8:8-9), but again, nowhere in the Opposition or the Complaint do Plaintiffs identify any "intimate details" allegedly learned by Luxottica or any Third Party. Plaintiffs' failure to do so is fatal. *See Popa*, 153 F.4th at 786.

Plaintiffs claim that *Popa* is distinguishable because there, "the session replay software was limited to collecting data about the use of a single website for the defendant's own use" and here, Luxottica allegedly causes tracking by Third Parties beyond its own Website. Opp. at 5-6, n.2. But that argument misses the mark because even if Luxottica caused the Third Party's ability to track Plaintiffs beyond the Luxottica Websites, Plaintiffs' allegations still fail because they do not allege *what* information beyond the Luxottica Websites was allegedly collected, let alone plead facts demonstrating that the information was sensitive or personal to create a concrete injury. Rather, the only facts pled in the Complaint as to what information was allegedly collected are Plaintiffs' interactions with Luxottica's Websites, which Plaintiffs themselves do not even contend is sensitive in nature. *See* Compl. ¶¶ 131-32, 141-45, 153-56; *see also Rodriguez v. Culligan Int'l Co.*, No. 25-

CV-00225-AJB-KSC, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) (dismissing CIPA claim for lack of standing under *Popa* and *TransUnion*, holding plaintiff lacked privacy interest in information like "browser name, browser version number, browser language, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media identities, customer and/or loyalty IDs, cookies and device signature"); *Wooten v. BioLife Plasma Services L.P.*, No. 1:25-CV-00099-KES-SKO, 2025 WL 2979619, at *4 (E.D. Cal. Oct. 22, 2025) (plaintiffs "failed to establish standing" for CIPA wiretapping and pen register claims under *Popa* because they "do not allege that the third-party trackers collected any other 'embarrassing, invasive, or otherwise private information'"); *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (dismissing website tracking data privacy action for lack of standing, stating "*Popa* controls the analysis in this case. As in *Popa*, Plaintiff identifies 'no embarrassing, invasive, or otherwise private information collected.'").

Indeed, Plaintiffs' own cited cases support dismissal here. Plaintiffs rely on cases where, unlike here, actual sensitive information was implicated. *See* Opp. at 5-8; *Gabrielli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *12 (N.D. Cal. Aug. 29, 2025) (finding standing because "Haleon's websites involve healthcare" and distinguishing pet food supplies implicated in *Popa*); *Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) (information including "personal topics like nutrition and fitness tracking" was sufficiently "embarrassing, invasive, or otherwise private" to satisfy *Popa*'s requirement). Plaintiffs' other cited cases are inapposite because those cases involved claims asserted against data brokers who are in the business of collecting and exploiting sensitive information, not a retail website like Luxottica who Plaintiffs do not allege collected, transmitted, or even had access to any sensitive information. *See Krzyzek v. Openx Techs., Inc.*, No. 25-cv-05588-SI, 2026 WL 206855 at *3 (N.D. Cal. Jan. 27, 2026) (plaintiffs alleged a "more invasive injury" than in *Popa* because defendant data broker tracked their "highly sensitive browsing activity" across the internet); *Semien v. Pubmatic Inc.*, No. 25-cv-03164-SI, 2026 WL 216333, at *5 (Jan. 27, 2026) (same).

Without any facts to support an allegation that the information allegedly collected and transmitted was sensitive in nature, Plaintiffs instead turn to hypothetical allegations that *potentially*

sensitive information beyond Luxottica's websites *could be* collected by Third Party use of cookies generally (Opp. at 6). This is insufficient because generalized, potential harm is not enough to establish standing under Ninth Circuit precedent. *See Popa*, 153 F.4th at 791, n.5 ("[T]he complaint identifies potential harms that might be associated with session-replay technology, such as identity theft. But the complaint includes no allegations plausibly linking these potential, generalized harms to the operation of Clarity on PSP's website vis-à-vis Popa."). Similarly, Plaintiffs' allegations that Third Parties can *deduce or infer* potentially personal characteristics (i.e., demographic information) from Plaintiffs' ordinary public web interactions (Opp. at 7; Compl. ¶ 33) are insufficient to plausibly allege that sensitive and personal information was actually collected by the Third Parties' cookies. Plaintiffs do not have a privacy interest in other people's inferences. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022) ("it is not plausible that Google can deduce a user's menstrual cycle just from knowing how long the user uses a fertility tracker app" as "[p]laintiffs do not allege that Google collects specific menstrual cycle information inputted in the fertility tracker app").

While Plaintiffs attempt to patch these holes by labeling ordinary web interactions as "Private Communications" (*see* Opp. at 3), it is well-established that a plaintiff must allege "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The so-called "Private Communications" here consist of (1) mere ordinary web interaction data (browsing history, visit history, website interactions, user input data, device information, referring URL, session information, user identifiers) or (2) inferences that Plaintiffs claim Third Parties can make from the ordinary web interaction data (demographic information, interests and preferences, shopping behavior). *See id*; Compl. ¶ 33, 44, 56. That is not sensitive or personal information sufficient to establish an Article III concrete injury.

**2.      Plaintiffs' Focus on How the Information Was Collected Is Insufficient**

Neglecting to address the lack of sensitivity of their allegedly collected information, Plaintiffs claim that their concrete Article III injury is Luxottica "track[ing] their Website interactions . . . in direct violation of its promise not to do so." Opp. at 6:15-17. But breaching a promise not to share non-sensitive information does not suddenly make the information sensitive

or create a concrete injury. *See* Mot. at 7-8. Plaintiffs do not contend with any of Luxottica's cited authority clearly establishing that a defendant's conduct alone, even if illegal, cannot form the basis of a concrete Article III injury. *See id.* And taking Plaintiffs' logic to its natural conclusion, every breach of a promise would result in an Article III cognizable and concrete harm. That is not the law. *See, e.g. In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 978 (N.D. Cal. 2014) (collecting information in violation of privacy policy "in and of itself did not confer standing"); *Rosenthal v. Wells Fargo Bank, N.A.*, No. CV 17-4570-GW (KSX), 2018 WL 6118519, at *5 (C.D. Cal. Apr. 5, 2018), *aff'd*, 771 F. App'x 390 (9th Cir. 2019) ("[A] false representation without resulting harm is insufficient to establish standing"); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) ("[C]ourts must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all. Otherwise, every data breach (or any situation in which one loses control of information) would confer standing, regardless of whether private information is exposed.").

Plaintiffs similarly claim that Luxottica acting contrary to Plaintiffs' "express wishes" is sufficient to show an injury analogous to an invasion of privacy or intrusion upon seclusion claim (*see* Opp. at 5:3-19) but that contention "misapprehends the legal test." *Bradshaw v. Lowe's Companies, Inc.*, No. 25CV0742 DMS (MMP), 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025). Indeed, "[w]hether **the conduct** at issue has a historical analog does not answer the question of whether the plaintiff has suffered a **concrete injury**." *Id.* (emphasis added); *see also* Mot. at 7-8. Simply put, regardless of whether Luxottica represented that it would not collect the data, Plaintiffs are required (but fail here) to sufficiently allege that their data at issue is sensitive enough to implicate a cognizable privacy right.

In sum, the Court lacks subject matter jurisdiction because Plaintiffs have alleged no concrete injury and therefore have no standing. The Complaint should be dismissed.

**B.** **Plaintiffs' Invasion of Privacy and Intrusion Upon Seclusion Claims Should be Dismissed for Failure to State a Claim**

Plaintiffs fail to demonstrate in their Opposition that the Complaint satisfies the two elements required for invasion of privacy and intrusion upon seclusion claims: (1) a reasonable

expectation of privacy; and (2) an intrusion that is highly offensive to a reasonable person. *See* Mot. at 9.

***Reasonable expectation of privacy***: As discussed in Luxottica's opening Motion (Mot. at 9), the Ninth Circuit ruled that <u>both</u> the sensitivity of the information collected *and* the manner of collection determine whether an expectation of privacy is reasonable. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020) (emphasis in original). Plaintiffs focus entirely on the manner of collection and ignore that the information collected is plainly not sensitive. Opp. at 10. That is insufficient. *See id.*

For this reason alone, the cases Plaintiffs rely upon are easily distinguishable. *See e.g.*, *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021) (finding reasonable expectation of privacy, in part, because of "the sensitivity of the data collected"); *Haleon*, 2025 WL 2494368, at *7 (defendant's "websites involve healthcare"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 & n.9 (N.D. Cal. 2023) (considering sensitivity under *In re Facebook* as "instructive" and finding that the data collected was "sensitive" particularly because "evidence exists that users go Incognito because what they are searching is sensitive[,]" for example, "look[ing] up health conditions").

Plaintiffs also rely on *Walsh v. Dollar Tree Stores, Inc.*, but the court there did not apply *In re Facebook*'s clear holding that *both* sensitivity and manner of collection determine reasonable expectation of privacy and the court's ultimate holding contravenes that instruction. *See* No. 25-CV-01601-SVK, 2025 WL 2939229, at **14-15 (N.D. Cal. Oct. 16, 2025). Plaintiffs do not offer any explanation reconciling *Walsh*'s holding with *In re Facebook*.  The Court should follow the line of authority that properly considers the sensitivity of the information allegedly intruded upon or invaded, as the Ninth Circuit instructs. *See* Mot. at 9-10.

***Highly offensive conduct***: Plaintiffs claim that Luxottica's argument on the "highly offensive" prong is "largely redundant with its 'sensitive' argument" (*id*. at 10:11) yet once again fail to set forth how the information collected from Luxottica's Websites is remotely sensitive in nature (it is not) or specify what other sensitive information was allegedly collected elsewhere. *See* Mot. at 9-11; *see also Hammerling*, 615 F. Supp. 3d at 1091 ("more importantly, Plaintiffs do not allege that the data allegedly collected by Google is sufficiently specific or personal, and its

6

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

collection sufficiently harmful, to be highly offensive"); *Foley v. Bates*, No. C07-0402 PJH, 2007 WL 1430096, at *8 (N.D. Cal. May 14, 2007) (dismissing invasion of privacy claim because plaintiff did not allege "dissemination of any sensitive or confidential information").

As a last resort, Plaintiffs claim that "the Websites all involve eyeglasses, which are related to the Plaintiffs' health" and thus, Plaintiffs have implicated sensitive information. Opp. at 10:14-17. Plaintiffs cannot cite a single case to support that facially implausible contention. Browsing a public retail website for eyeglasses is not sensitive. Indeed, far more arguably personal information has been found to be plainly not sensitive. *E.g.*, *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995-96 (9th Cir. 2023) ("names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views and associations" were not "so sensitive that another's access to that information 'would be highly offensive to a reasonable person'") (citation omitted)); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("[e]ven disclosure of personal information, including social security numbers, does not constitute an egregious breach of the social norms to establish an invasion of privacy claim") (internal quotations omitted).

Plaintiffs also claim that none of Luxottica's cited cases are "on point because none of them address a situation where the defendant enabled third parties to collect a user's data in violation of an express assurance that such data would not be collected or shared." Opp. at 9:22-24. That is incorrect. *See* Mot. at 10:17-21 (citing *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d at 987-88 (dismissing intrusion claims, holding that Google's disclosure of user's personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, and declared preferences to third party, ***in violation of its own privacy policy***, was not highly offensive) (emphasis added)). And the cases cited by Plaintiffs are distinguishable. In *In re Vizio, Inc.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017), for example, the court found the defendant's alleged conduct highly offensive due to "the quantum and nature of the information collected," not just alleged failure to respect users' privacy choices, and distinguished the facts here, stating "Vizio's disclosure practices are far less routine than, say, the use of cookies[.]" *Id.* at 1233. The court also found that the plaintiffs "identif[ied] a discrete type of sensitive information (video viewing history) that is legally protected" and sufficient to allege an invasion of privacy. *Id.* at 1232. And Luxottica already

7

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

discussed *Gabrielli v. Motorola Mobility LLC* in its opening Motion (*see* Mot. at 10-11), explaining that all of the cases the Court relied on in *Motorola Mobility LLC* on the "highly offensive" prong involved sensitive information. *See* Mot. at 11:5-21. Plaintiffs offer no response to this point.

The Court should dismiss Plaintiffs' common law privacy claims.

### C.    Plaintiffs' CIPA Claims Should Be Dismissed

#### 1.    Plaintiffs Concede that Aldana's and Kambick's CIPA Claims Are Time-Barred

Luxottica established in its opening Motion that, according to Plaintiffs' own Complaint, Plaintiffs Aldana's and Kambick's CIPA claims are barred by the one-year statute of limitations. Mot. at 12-13. Plaintiffs make no attempt to rebut Luxottica's argument. Instead, they merely assert that the defense does not apply to Moore's claims. *See* Opp. at 11 n.4. As a result, Plaintiffs concede that Aldana's and Kambick's CIPA claims should be dismissed with prejudice as time-barred. *See e.g.*, *Pete v. Facebook Data Breach*, No. 25-CV-09081-JST, 2026 WL 32635, at *2 (N.D. Cal. Jan. 6, 2026) (Tigar, J.) ("Pete's opposition briefs fail to respond to this argument, and he thus concedes that his claims should be dismissed on that ground.") (collecting cases).

Plaintiff Moore's CIPA claims should be dismissed for the reasons that follow.

#### 2.    The Alleged Third-Party Cookies Are Not "Pen Registers"

Plaintiffs fail in their Opposition to support their flawed reading of CIPA that a device which collects both contents and routing information can be a "pen register."

Plaintiffs spend more of their Opposition block quoting and summarizing *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147 (N.D. Cal. 2025) (Pitts, J.) and *Haleon US Inc.*, 2025 WL 2494368 (Orrick, J.) than they do explaining to this Court why those courts' rationale is correct. *See* Opp. at 11-14. Respectfully, those decisions are based on flawed reasoning, and this Court should not adopt them here for at least the four reasons articulated in Luxottica's opening Motion. *See* Mot. at 14-17. The court in *In re Meta Pixel*, for example, concluded that "[t]he relevant statutory language is ambiguous." 793 F. Supp. 3d at 1153. But the court's conclusion simply cannot be reconciled with the plain language of the statute and inserts purported ambiguity by reading the word "only" into the statute where it does not appear (*i.e.*, "but not ***only*** the contents of

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

a communication"). *Id.*; *see* Mot. at 15. Indeed, a statute is not ambiguous simply because its natural reading would limit a potential claim. *See United States v. Flores-Garcia*, 198 F.3d 1119, 1123 n.5 (9th Cir. 2000) ("A statute is not ambiguous simply because it is possible to construe a statute narrowly.") (internal citation omitted).

In *Haleon*, the court relied on the purported "statutory ambiguity" found by the *In re Meta Pixel* court and stated that reading the definition of pen register to exclude a device that records contents of communications "would lead to the conclusion that any pen register that also recorded the 'contents' of users' information would no longer fall under the protection of Section 638.1(a) of CIPA." *Haleon*, 2025 WL 2494368, at *12. But by definition, a pen register does **not** record contents (Cal. Pen. Code § 638.50(b)) and thus, **there can be no such thing as** a "pen register that also record[s] the 'contents' of users' information." *See id*; *see also* Mot. at 15-16. The *Haleon* court's reading that a pen register can also collect contents of a communication cannot be reconciled with other courts' findings that pen registers are pled only where the plaintiff expressly alleges that the tracker at issue *does not also* collect the contents of communications with a website. *See e.g.*, *Garon v. Keleops USA, Inc.*, No. 25-CV-02124-DMR, 2025 WL 2522374, at *4 (N.D. Cal. Sept. 2, 2025); *see also Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024) (trackers were pen registers because "Trackers are not alleged to collect the contents"); *Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 2886399, at *5 (N.D. Cal. Oct. 9, 2025) (allegations that "trackers record [routing] information, while not capturing the substantive content of the communications, is sufficient to plausibly state that they function as pen registers").

Plaintiffs also fail to acknowledge that the highest California state court to address the issue to date explained that both CIPA's pen register and trap-and-trace device definitions are subject to a "limiting phrase" that expressly exclude devices that collect contents. *See Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at **2-3 (Cal. Super. Ct. Apr. 01, 2025) (explaining pen register definition accounts for technological evolution but "what has remained steadfast throughout is the principle that neither a pen register nor a trap and trace device can decode 'the contents of a communication.' In other words, the crucial distinction from other devices is that both 'pen registers' and 'trap and trace devices' are designed to capture information about the

9

communication, but not the content of the communication itself. Indeed, other devices accomplish that, and a host of statutes and caselaw are directed at those other devices too.") (underlined emphasis original).[1] Thus, interpreting the statute consistent with its plain meaning does not create a statutory loophole to escape liability, as Plaintiffs incorrectly argue. *See* Mot. at 16-17.

Plaintiffs' remaining arguments are equally unavailing. Opp. at 14-15. Telecommunications companies have an exception to CIPA's pen register and trap-and-trace provisions because ***they only collect routing information, not contents***. A telecom company that collected contents would not be entitled to the exception for the use of pen registers because it was using a device that was not a pen register. Once again, the statutory language is internally consistent and there is no loophole. Nor do Plaintiffs provide any meaningful argument explaining why California's and the Fourth Amendment's differing levels of protection for using a pen register versus a wiretap would allow a device that collects content to be considered a mere pen register. *Compare* Mot. at 16-17 *with* Opp. at 14-15.[2]

Finally, while a plaintiff is generally permitted to plead in the alternative, Plaintiffs do not do so here. Instead, they state affirmatively and without reservation that the cookies allegedly used by Luxottica collect contents. Compl. ¶¶ 50, 62, 211, 225. A plaintiff cannot claim in an opposition to a motion to dismiss to be pleading in the alternative when it does not actually do so in the complaint. *See McZeal v. Blue Castle (Cayman) Ltd.*, No. 2:24-CV-06520-RGK-PD, 2025 WL 3899249, at *4 (C.D. Cal. Oct. 28, 2025) ("[A] plaintiff may not amend the complaint through statements raised in opposition to a motion to dismiss[.]").

### 3.    Plaintiffs' Communications Were Not Allegedly Read While in Transit

Plaintiffs contend that they have satisfied CIPA § 631(a)'s "in transit" requirement by alleging that the communications were intercepted in transit. Opp. at 15:27-16:4. But Plaintiffs

---

[1] Contrary to Plaintiffs' assertion, cases interpreting the exclusionary language in CIPA's definition of a trap-and-trace device are persuasive authority for interpreting the *identical exclusionary language* in CIPA's pen register definition. *See* Mot. at 15-16.

[2] Plaintiffs' discussion of *Carpenter v. United States*, 585 U.S. 296, 320 (2018) about an individual's constitutional privacy interest has nothing to do with how the legislature defined "pen register" under CIPA or the well-established definition of a "pen register" in the Fourth Amendment context. Opp. at 15:1-13.

admittedly do not support that contention with adequate case law (*see id.* at 16:4) and do not allege that the communications were "read, learned, or attempted to be read or learned ***while in transit***," as opposed to after they have already been intercepted by third parties such as Meta.

In fact, Plaintiffs' cited cases refute their own position. For instance, Plaintiffs cite *Doe v. Eating Recovery Center*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025), in support of their argument that the Third Parties read the contents of Plaintiffs' communications with Luxottica while those communications were in transit. But there, the court *rejected* the plaintiff's argument that the information was read, attempted to be read, or learned while in transit and granted summary judgment in favor of the defendant because there was no genuine issue of material fact—Meta ***did not*** read or learn the contents while the communications at issue were in transit. *Id.* at 1117-19. This same rationale applies here.

### D.   Plaintiffs' Equitable Claims Should Be Dismissed

Plaintiffs contend that they are permitted to plead equitable relief in the alternative, but their contention "misses the mark" because "'[t]he question is not whether or when Plaintiffs are required to choose between two available inconsistent remedies, it is whether equitable remedies are available to Plaintiffs at all,' specifically because of inadequate legal remedies." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 648 (N.D. Cal. 2024) (citation omitted). Dismissal is warranted here because Plaintiffs cannot rebut that they do not plead that they lack an adequate remedy at law. *See e.g.*, *Chiulli v. Am. Honda Motor Co.*, 690 F. Supp. 3d 1038, 1062 (N.D. Cal. 2023) (dismissing unjust enrichment claim for failure to plead no adequate remedy at law); *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1157 (N.D. Cal. 2021) ("[A] quasi-contract claim cannot survive a motion to dismiss unless the proponent adequately pleads that no legal remedy exists[.]").

Plaintiffs' reliance on *Wiley v. Universal Music Grp., Inc.*, No. 25-CV-03095-PCP, 2025 WL 3654085, at *10 (N.D. Cal. Dec. 17, 2025), *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1114 (N.D. Cal. 2020) and *Haleon*, 2025 WL 3654085, at **14-15 is misplaced because in those cases, the defendants did not argue that the plaintiffs failed to allege that they lack an adequate remedy at law. *See id.* Additionally, *Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) did not deal with an unjust enrichment claim. And neither

*Jeong* nor *Pereda v. Gen. Motors LLC*, No. 21-CV-06338-JST, 2022 WL 19975388, at *11 (N.D. Cal. Dec. 9, 2022) held that plaintiffs do not have to at least plead that they lack an adequate remedy at law. *See Pereda*, 2022 WL 19975388, at *11 (stating *Sonner* does not require *more* than plaintiff "plead[ing] that she lacks an adequate legal remedy"). Even by their own standard, Plaintiffs' allegations fail.

Moreover, Plaintiffs claim it is "well-established" that it is sufficient to plead that they "wish to continue to browse Luxottica websites for information, but cannot do so without fear their interactions will be tracked against their wishes," but do not cite a single case to support their broad contention. To the contrary, a "'some day' intention" with no "description of concrete plans, or indeed even any specification of *when* the some day will be—does not support a finding of the 'actual or imminent' injury" that Article III requires. *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (internal citations and alterations omitted).

**E.     Plaintiffs' Fraud Claim Should Be Dismissed for Failure to Allege Damage**

Plaintiffs claim that they do not need to allege economic damages in support of their fraud claim, rather "the invasion of their privacy and communications and the loss of control over their personal information, after being assured they could retain control over that information" are "recognized, cognizable damages." Opp. at 21. Plaintiffs are wrong, and Plaintiffs offer no legal support that alleging a violation of privacy or offering conclusory allegations that their alleged "information" has some unknown "value" is sufficient to establish *economic damages* in support of a *fraud* claim.

Plaintiffs' alternative theories of damages do not work because it is well-established that "[u]nder California law, a cause of action for fraud requires that the plaintiff suffer compensable damages." *John Paul Mitchell Sys. v. Eslami*, 110 F.3d 68 (9th Cir. 1997); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1126 (N.D. Cal. 2002) ("As plaintiff must plead cognizable 'out-of-pocket' damages to state a cause of action for fraud, plaintiff has not adequately pleaded a cause of action for fraud."). Plaintiffs rely on inapposite cases involving the Comprehensive Computer Data and Access Fraud Act ("CDAFA"), but unlike a fraud claim, "to show 'damage or loss' under CDAFA, a plaintiff need not have suffered a corresponding loss" and disgorgement of profits is indeed a

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

viable theory. *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2024 WL 38302, at *6 (N.D. Cal. Jan. 3, 2024); *see* Opp. at 21-22 (citing *Brown v. Google LLC*, 685 F. Supp. 3d 909, 939 (N.D. Cal. 2023) and *Rodriguez v. Google*, 2024 U.S. Dist. LEXIS 1290, at *35–36 (N.D. Cal. Jan. 3, 2024). Plaintiffs also attempt to distinguish *Walsh*, stating the court was discussing contract damages, but that is incorrect. *See* 2025 WL 2939229, at *21 (granting motion to dismiss common law "fraud claim" because complaint "lack[ed] sufficient allegations of actual damage").

And to the extent Plaintiffs claim they lost some sort of value in their information by interacting with Luxottica's websites, Plaintiffs "do not, however, allege facts explaining how [the Third Parties'] collection and use of their information reduces the value of that information[.]" *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024) (cited with approval in *Walsh*, 2025 WL 2939229, at *20 in dismissing fraud claim).

Accordingly, Plaintiffs' fraud claim should be dismissed for failure to allege resulting damages.

### F.    Plaintiffs Aldana and Moore Fail to State Any Claim Under Rule 9(b) Standards

Plaintiffs concede that in order to satisfy Rule 9(b), they have to allege the "occasions that Plaintiff visited Defendant's website[.]" Opp. at 22:21-22. But neither Plaintiff Moore nor Plaintiff Aldana does so.

Indeed, Plaintiff Aldana's allegations are virtually identical to those in *Wiley*, which were held to be insufficient. *See Wiley*, 2025 WL 3654085, at *10 ("Here, plaintiffs have inadequately pleaded the 'when . . . of the misconduct alleged' . . . Plaintiffs allege only that they visited specific UMG websites at some unspecified point in the last four years and that, despite opting out of some cookies, UMG 'nonetheless caused cookies and tracking technologies' . . . This level of generality fails to provide UMG with notice of the misconduct alleged."). Plaintiffs claim that the high "number of websites at issue" in *Wiley* (six websites) makes that case distinguishable but here, Plaintiffs include *nineteen* different websites (*see* Compl. ¶ 1), so if anything, Plaintiffs' allegations here contravene Rule 9(b) even more than plaintiff *Wiley*'s allegations. *Wiley*, 2025 WL 3654085, at *10 (defendant "cannot, for example, determine what specific representations regarding cookies were made on [its] websites on the specific dates that [plaintiffs] visited those websites or determine

13

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

how the websites were using any cookies placed on users' devices on those specific dates"). And the Court should not accept Plaintiffs' contention that the Luxottica Websites did not change over the time periods they allege given that the Complaint itself acknowledges changes to the Websites. *See e.g.*, Compl. at 15 n.3.

### G.       At Minimum, Plaintiffs Lack Standing to Bring Claims Based on Other Websites

Luxottica acknowledges the split in authority on this issue, but the Court should not accept a "substantial similarity" theory or defer the issue to class certification because those concepts are not an adequate substitute for the jurisdictional standing requirement. Indeed, "the 'substantial similarity' analysis appears to be inconsistent with the basic concept of standing [because] . . . [t]he similarity of a product, by itself, says nothing about whether a party suffered an injury traceable to the allegedly wrongful conduct of another." *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908–09 (C.D. Cal. 2021); *Oh v. Fresh Bellies, Inc.*, No. CV 24-5417 PSG, 2024 WL 4500727, at *4 (C.D. Cal. 2024) (acknowledging that court "has previously held that a class action plaintiff can bring claims for products they did not purchase and postponed the substantially similar inquiry until the class certification stage. . . . However, in light of the analysis in *Lorentzen*, the Court is persuaded that Plaintiff does not have standing to bring claims for products she did not purchase" under both Rules 12(b)(1) and 12(b)(6)); *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10-CV-02630 JAM, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011) (noting courts are split over whether a named plaintiff has standing to assert claims for similar products and advertising but jurisprudence finding lack of standing is "more in line" with binding California Supreme Court authority).

Additionally, the Ninth Circuit and Supreme Court have emphasized that standing is an individualized inquiry and rejected the notion that standing can simply be conferred to one by virtue of another's. *Popa*, 153 F.4th at 792 (discussing *TransUnion*, stating "[t]he Court determined that some plaintiffs had standing to bring a claim under the statute while others did not—an implicit rejection of a one-size-fits-all approach"). This should caution the Court against adopting a "substantial similarity" theory which "improperly loosen[s] Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *See id.* at 789.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST

Moreover, Plaintiffs do not point the Court to any facts to support the contention that Luxottica's Websites were sufficiently similar. Instead, after asserting allegations specifically about the Oakley Website, the Complaint simply concludes that the "other Websites similarly cause consumers' devices to transmit user data to third parties—even after consumers reject cookies by clicking or selecting the "Reject" button—on those Websites." Compl. ¶ 47. No facts in the Complaint explain how the other Websites similarly cause the same alleged violations and Plaintiffs simply conclude that all the Websites offer the same two options for cookie management without any other facts about the sixteen other Websites that Plaintiffs did not visit. That is insufficient, even under Plaintiffs' preferred test.

This is not a class certification issue, it is a standing issue, and Plaintiffs should not be permitted to obtain broad swaths of discovery about sixteen other Websites that they never even interacted with based on conclusory allegations sweeping in Luxottica's entire web business operations. The Court should, at minimum, dismiss claims about Websites Plaintiffs did not visit.

### H.   Plaintiffs Should Not Be Granted Leave to Amend

Plaintiffs offer no explanation as to how an amendment would cure any deficiency raised by Luxottica's opening Motion. Where a "deficiency cannot be cured by amendment," the Court should dismiss the complaint without leave to amend. *Pete v. Facebook Data Breach*, No. 25-CV-09081-JST, 2026 WL 32635, at *2 (N.D. Cal. Jan. 6, 2026). And where plaintiffs have clearly made their "best case" and it is still deficient, amendment will be futile. *McZeal v. Blue Castle (Cayman) Ltd.*, 2025 WL 3899249, at *5. There is no indication that Plaintiffs would plead any additional facts that would cure any of the alleged deficiencies and for that reason, leave to amend should not be granted.

## III.   CONCLUSION

For the foregoing reasons, Luxottica's Motion should be granted, and the Complaint should be dismissed in its entirety with prejudice. In the alternative, Plaintiffs' allegations regarding Luxottica's other websites that Plaintiffs did not visit should be dismissed or stricken for lack of standing.

DATED: April 3, 2026                **BLANK ROME LLP**

                                    By:  */s/ Melissa Fundora Murphy*
                                    Melissa Fundora Murphy (*admitted pro hac vice*)
                                    Glen L. Abramson (*pro hac vice forthcoming*)
                                    Serena S. Gopal (*pro hac vice forthcoming*)
                                    One Logan Square
                                    130 N. 18th Street
                                    Philadelphia, PA 19103
                                    Telephone: 215.569.5334
                                    melissa.murphy@blankrome.com
                                    glen.abramson@blankrome.com
                                    serena.gopal@blankrome.com

                                    Jessica A. McElroy (SBN 299919)
                                    2029 Century Park East | 6th Floor
                                    Los Angeles, CA 90067
                                    Telephone: 424.239.3400
                                    Facsimile: 424.239.3434
                                    jessica.mcelroy@blankrome.com

                                    *Attorneys for Defendant*,
                                    LUXOTTICA OF AMERICA INC.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 4:25-cv-10840-JST